SARAH WHITMAN, Appellant, v. CHICAGO, GREAT WESTERN RAILWAY COMPANY, Appellee.

**TRIAL: Instructions—Invading Province of Jury—Negligence.** The court must not, in its instructions, even inferentially, invade the province of the jury. So held where the court, by inference at least, told the jury that the actions of an injured person, in view of certain knowledge, and the failure to do certain things, constituted negligence.

PRINCIPLE APPLIED: Plaintiff was injured by falling down the steps leading from a railway depot. On the question of negligence, the court instructed (italics are ours): ''In determining whether or not the plaintiff exercised such reasonable and ordinary .care, it is proper for you to consider the number of times plaintiff had passed over the steps in question; that she knew the steps were there; that she knew it was so dark she could not see the steps and as bearing on that question you may also consider whether or not the plaintiff took hold of the door jamb, or asked for lights, *or took any other reasonable precautions and care for her own safety.*'' *Held* error, under above rule.

**TRIAL: Instructions—Undue Emphasis on Evidence—Biased Recital of Facts.** It is reversible error for the court in its instructions to unduly emphasize the facts and circumstances which tend to disparage plaintiff's theory, while at the same time giving undue prominence to the facts and circumstances which tend to exculpate defendant. The practice of reciting evidentiary facts is condemned, generally.

**NEGLIGENCE: Care of Premises—Duty to Non-trespasser—Common Carrier.** One who, expressly or impliedly, invites people to come upon his premises must keep them in a reasonably safe condition, irrespective of his own convenience. So held where a former passenger, with the consent of the railway company, was waiting at a depot for a conveyance, and was injured by reason of a defect in the building.

*Appeal from Bremer District Court.*—HON. C. H. KELLEY, Judge.

TUESDAY, SEPTEMBER 21, 1915.

ACTION for personal injury. Opinion states the facts.— *Reversed.*

*Sager & Sweet,* for appellant.

*Hagemann & Farwell* and *Carr, Carr & Evans,* for appellee.

GAYNOR, J.—This is an action to recover for personal injuries which the plaintiff claims she sustained in attempting to pass from defendant's waiting room on the evening of September 18, 1910. It appears that the plaintiff was a passenger on defendant's railway from Waverly to the town of Tripoli, Bremer county, Iowa; that she arrived at the town of Tripoli in the evening; went immediately from the train to the station house for the purpose of awaiting the coming of her husband. After waiting a short time at the station house, in the waiting room, it became dark. No lights were in the waiting room, or about the station house, except one in the ticket office, where the station agent was at work. When she went to the station house to wait for her husband, she asked the ticket agent, in charge of the station, whether any of her people had been in town that day, and he said they had, but had gone home. She asked him then if she might wait there in the station house and he said "Yes. I am going to supper and will be back in a little while. You can stay here." After she had remained in the station house a short time, she went to the hotel to get her grip, which someone had carried there. She returned, however, with her grip to the depot. When the agent returned from supper, she asked him if she could use the telephone to call her husband. The agent told her she had better go to the hotel and telephone from there; so she started to leave the waiting room for that purpose, leaving her

grip behind. In passing out of the door, she fell, and received the injuries of which she complains.

She testified that she went to the hotel for her grip before the agent went to supper, but after she had asked him if she might remain in the depot. She also testified that it was light when she got back from the hotel; that in going to the hotel, she departed and returned through the same door out of which she fell. She also testified that it was dark when she asked the agent if she might use his telephone to communicate with her husband. She further testified: "When I started to the hotel to telephone, and at the time I fell, it was so dark you couldn't see the steps or anything. Couldn't see the platform or rails"; that she was not positive whether the door was closed and she opened it, but thinks it was open. She noticed that it was dark outside, and that she couldn't see the steps. As to her fall, her testimony is: "After starting to go to the hotel, I stepped out the door to step down and the next thing I knew, I laid upon the platform." She says she noticed it was so dark that she couldn't see, at the time she attempted to leave the waiting room and fell. There were three steps leading to the waiting room. She said she had the steps in mind when she started out to telephone; that she looked to see where they were, but it was so dark that she couldn't see. She further testified: "I don't think I had hold of the doorway on either side as I went to step out."

The train on which the plaintiff arrived reached Tripoli about 6 o'clock in the evening. There was no other train scheduled to leave Tripoli on that day after 6 o'clock. The next train was scheduled for 7 o'clock the next morning. No train stopped at or carried passengers from Tripoli between these hours.

The cause was tried to a jury and a verdict rendered for the defendant. Judgment being entered upon the verdict, plaintiff appeals.

In view of the fact that this case must be reversed, we have not attempted to set out all the evidence, or even a sub-

stantial portion of the evidence that went to make up the case.
Nor do we assume to pass upon the sufficiency of the evidence to make a case for or against the plaintiff. The plaintiff in her appeal complains of the action of the court in the submission of the cause to the jury. We will not attempt to set out the errors complained of in the language of appellant, nor in the order in which they are presented in appellant's brief. Suffice it to say that the plaintiff complains of the instructions of the court to the jury as a whole. Although appellant has divided her complaint of these instructions into several parts, the objection urged, when concretely stated, is that the court unduly emphasized what the court conceived to be the duties which the plaintiff owed to herself for her own protection; unduly emphasized the things omitted by her which she might have done, with the suggestion added that the omitted things, if done, would have prevented the accident of which she complains. There is no claim that the court did not correctly state the law of the case, but in the manner of stating it, the court made prominent and gave undue emphasis to those facts from which an inference of negligence on the part of the plaintiff might be drawn, and omitted any suggestion as to facts quite as well established and as closely related to plaintiff's conduct at the time as were the facts set out or referred to and emphasized in the instructions, from which an inference of due care might be drawn.

1. TRIAL : instructions : invading province of jury : negligence.

Thus it is claimed that the court in its instructions made a point to the jury of the fact that the plaintiff failed to ask for lights, while no word was spoken to the jury of the duty of the defendant to furnish lights. The attention of the jury was especially directed to the fact that the night was dark, very dark; that the plaintiff knew it was dark, and knew that she could not see the steps when she attempted to pass out the door. The suggested inference is that she was negligent in attempting to pass out the door without asking for

lights, under the conditions that attended her act. The jury's attention was especially directed to the fact that she had previously passed over these steps and through this door when it was light and she could see; that when she attempted to pass out the door at the time she fell, she failed to take hold of the door jamb.

As will be seen hereafter, the inference suggested by the instructions, as given, in the manner in which they were given, was that reasonable care required plaintiff to ask for lights before attempting to leave the room; that a failure to take hold of the door jamb in attempting to pass out of the room was an act of carelessness. It is claimed, in fact, that the court in its instructions called the jury's attention especially to all the points of weakness, if any weakness there was, in the plaintiff's evidence touching her contributory negligence; while it passed over, in general terms, the negligence of the defendant, saying simply, when speaking of defendant's duties and the negligence charged against the defendant:

"The burden of proof is on the plaintiff to show that the defendant was negligent in respect to the matters charged, or some of them; that negligence is the omission to do something which a reasonably prudent person, guided by these considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a reasonably prudent person would not do, under similar or like circumstances."

We are inclined to think that there is some justice in the criticism urged against these instructions, though not to the extent urged. It has been repeatedly held by this court that it is the duty of the trial court, in its instructions to the jury, to submit to the jury, fully and fairly and impartially, the law essential to a proper determination of the rights of the parties under the record made. The attention of the jury should not be drawn to nonessential facts,—facts not determinative of the rights of the parties. The court should

not emphasize or give undue prominence to evidentiary facts, the existence or nonexistence of which must be settled by the jury. See *Campbell v. Wheeler,* 69 Iowa 588; *Doyle v. Bruns,* 138 Iowa 439; *West v. Railway Co.,* 77 Iowa 654; *Van Norman v. Modern Brotherhood,* 143 Iowa 536; *McBride v. Railway Co.,* 134 Iowa 398:

The court, in its eighth instruction to the jury, said:

"Both the plaintiff and the defendant were required to exercise ordinary care under the circumstances. You should carefully note that the degree of care which the plaintiff was required to exercise is exactly the same as that required of the defendant, and if the plaintiff failed to perform her duty in this respect, which failure contributed to her fall, then she cannot recover in this action, even though you also find that the defendant also failed in its duty. In determining whether or not the plaintiff exercised such reasonable and ordinary care, it is proper for you to consider the number of times the plaintiff passed over the steps in question; that she knew the steps were there; that she knew it was so dark that she could not see the steps, and, as bearing upon this question, you may also consider whether or not the plaintiff took hold of the door jamb, or asked for lights,' *or took any other reasonable precautions* and care for her own safety."

A casual reading of this instruction suggests the thought that it was the opinion of the court, and the jury were given to so understand, that if they found that the plaintiff had passed over these steps before, that she knew they were there, that it was so dark she could not see, that she did not ask for lights before attempting to pass out, that she did not take hold of the door jamb in attempting to pass out, she did not act as a reasonably prudent person would act under the circumstances; for, in the closing of the instruction, the court says, after reciting these facts, "or *take any other reasonable* precautions and care for her own safety," inferentially saying to the jury that the matters referred to in the instruction

tended to show that she did not take reasonable precaution and care for her own safety. This, we think, was invading the province of the jury, not perhaps directly, but inferentially, and therefore was .error.

In the ninth instruction, the court said to the jury:

"During the time that the relationship of passenger and carrier of passengers exists, the law requires of the carrier a high degree of care for the safety of the passenger. As between the plaintiff and the defendant, however, such relationship had ceased prior to the time she fell, and the only duty which the defendant then owed to her was that of reasonable and ordinary care. The mere fact that the defendant is a railroad company does not in any way increase its duty to the plaintiff, and in considering this case, you should be governed by the same rules that would apply between two individuals. In determining whether or not defendant was negligent in any or all of the respects claimed by plaintiff, as set out in paragraph one hereof, it is proper for you to consider the manner in which, with the knowledge and consent of defendant, the said station was used by the public, after the departure of trains, at and prior to the time plaintiff fell; the length of time which had elapsed since the train had departed at the time in question; the fact that, at the time, no trains were being operated over said road during the nighttime; the fact that the personal business of the defendant did not require lights in the vicinity of said steps, and all of the other facts and circumstances disclosed by the evidence."

2. TRIAL: instructions: undue emphasis on evidence: biased recital of facts.

It will be noted that in this instruction the court rather emphasized those facts which, in the mind of the jury, would ·tend to exonerate the defendant from all blame. Nowhere in the instructions does the court call the attention of the jury to the fact that the plaintiff was there with the knowledge and consent of the defendant company. Nowhere does it call at-

tention to the fact, which the evidence disclosed, that there were no lights in the room occupied by the plaintiff, or any duty on the part of the defendant to furnish lights.

Taking these two instructions together, the jury might well have inferred that the plaintiff was negligent if she did not call for lights; that no duty rested on the defendant to furnish lights; although the jury might, independent of this instruction, have found that reasonable care for the safety of the plaintiff required the furnishing of lights. The calling of the jury's attention to the fact that the plaintiff did not call for lights, without referring to the fact that the defendant company had not furnished any lights, might have led to the conclusion on the part of the jury that it was the opinion of the court that the defendant owed the plaintiff no duty to furnish lights unless called for by her, even though reasonable care on the part of the defendant might have suggested to the jury the necessity of furnishing lights, independent of her request.

This was a public waiting room, kept by the defendant for the use of the public in its dealings with the public. The plaintiff was there with the consent of the defendant. She was there awaiting the arrival of her husband. It is not unreasonable to suppose that the defendant knew that she would be required later to leave this waiting room through this door. There was no light there to guide her to or through the door. The door was at least two feet above the platform. The top step was under the threshold, narrowing the step to about seven inches. These matters were not recited by the court in its instructions to the jury.

While we deprecate the recital in instructions of facts and circumstances which have probative force upon the issues tendered, because they tend to give undue prominence to the facts recited, we are clearly of the opinion that, if the court undertakes to recite the facts disclosed by the evidence which have probative force upon the issues tendered, it must recite all the facts favorable to the party as well as those which militate

against his claim. We most emphatically dissent from the practice of reciting facts which militate against one party, without a recitation of the facts favorable to his contention, and reciting facts which are favorable to the other party's contention, without a recitation of facts disclosed by the evidence which militate against his contention, and we think that is the condition that confronts us here. In *Van Norman v. Modern Brotherhood*, 143 Iowa 536, 551, this court, speaking through Judge Weaver, said:

"The practice of embodying in an instruction a recitation of facts on which a party relies is not to be encouraged, because of the tendency to thereby unduly magnify the importance of the matters thus selected for specific mention."

It will be noted that, in the last instruction referred to, the court told the jury that, in determining whether or not the defendant was negligent, they should consider the fact that the personal business of the defendant did not require lights in the vicinity of the steps; that no trains were being operated over its road during the nighttime. It is apparent that it makes no difference whether the defendant's personal convenience required lights or not, if it owed a duty to furnish lights to those using the depot by its permission. It will be borne in mind that the plaintiff arrived at this station on defendant's train; that she immediately entered defendant's waiting room; that she was there and remained there with the knowledge and consent of the defendant company, pending the arrival of her husband to transport her to her home. The company then owed a duty to the plaintiff to keep the premises in a reasonably safe condition for her use during the time she remained there under those circumstances, and if reasonable care required the use of lights to that end, it was the duty of the company to furnish the lights, even though not requested by her. This court, speaking through Judge

3. NEGLIGENCE: care of premises; duty to non-trespasser: common carrier.

Deemer, in *Upp v. Darner*, 150 Iowa, quotation from page 407, stated the rule thus:

"One is under no duty to keep his premises in a safe condition for the visits of trespassers. But, if he expressly or by implication invites others to come upon his premises, it is his duty to be reasonably sure that he is not inviting them into a place of danger, and to this end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit."

In this ninth instruction, the court told the jury that when they came to consider whether or not the defendant was negligent, it was proper for them to consider the length of time that had elapsed since the train had departed; the fact that no trains were being operated over the road during the night; the fact that the personal business of the defendant did not require lights; but nowhere told them that, notwithstanding the fact that no trains were operated during the night, and notwithstanding the fact that the personal business of the defendant did not require lights in the vicinity of the steps, yet, if reasonable care for the safety of those who were in or using the waiting room, with the permission of the company, required lights in the vicinity of these steps, the company could not escape liability on the mere ground that it was not operating trains at that time and did not require lights for the transaction of its personal business.

When the plaintiff left the defendant's train and entered defendant's waiting room, and with the permission of the company remained there, awaiting transportation to her home, the company owed her some duty—a duty at least to exercise reasonable care to see that the waiting room was in a condition that rendered it reasonably safe, not only for her while remaining there, but in a condition reasonably safe for her to pass from the depot when the time arrived for her departure.

It may be admitted that she was not a passenger, but

she surely was not a trespasser. She was there for a legitimate purpose, growing out of her previous relationship with the company. She was there at least with the knowledge and consent of the company, and out of this relationship grew a duty to her personally, and a failure to exercise reasonable care in the discharge of this duty constituted actionable negligence. Nowhere did the court put the thought to the jury specifically that the company owed the plaintiff any duty.

We think that, for the errors pointed out, the cause ought to be and it is—*Reversed.*

DEEMER, C. J., LADD and SALINGER, JJ., concur.