SINK *v.* GRAND TRUNK WESTERN RAILWAY CO.

1. CARRIERS—RAILROADS—RELATION OF PASSENGER CONTINUES FOR REASONABLE TIME AFTER HE LEAVES TRAIN AND ENTERS STATION.

A passenger who leaves a railroad train and enters into the company's station remains a passenger for a reasonable time thereafter.

2. RAILROADS — NO DUTY OWING TO LICENSEE TO KEEP PREMISES SAFE.

A railroad company is under no obligation to keep its station grounds safe for the benefit of a licensee, but he is bound to accept the premises as he finds them.

3. CARRIERS—FORMER PASSENGER IN STATION BY PERMISSION AN INVITEE.

Where a passenger left defendant's train about 1:15 in the morning and entered its station before continuing his journey on a connecting railroad, and was given express permission by defendant's agent in charge, because it was raining, to remain until it was time for him to go to the other station, he was, while on defendant's premises in pursuance of said permission, at least an invitee, to whom defendant owed the duty of keeping its premises reasonably safe.

4. SAME—MUTUAL ADVANTAGE SUFFICIENT TO SUSTAIN RELATION OF INVITEE.

Defendant's claim that there was no such mutual advantage in the relation as to constitute plaintiff an invitee, under the circumstances, *held*, not sustainable, since, in a broad view, there was mutual advantage: an advantage to plaintiff in being housed from the storm and darkness, and an advantage to defendant in making passengers comfortable who chose to include its connection in their itinerary.

5. SAME—NEGLIGENCE—PERSONAL INJURIES—WHETHER CONDITION OF PREMISES REASONABLY SAFE FOR JURY.

In an action against a railroad company by a former

On the question as to places within implied invitation extended to passengers or persons on business at railroad station, see note in L. R. A. 1915B, 827.

On excessiveness of verdicts in actions for personal injuries other than death, see note in L. R. A. 1915F, 30.

.

passenger for personal injuries received when he fell into an unguarded pit on defendant's premises while returning to the station from the toilet, to which he had been directed by defendant's agent in charge, whether defendant kept its premises in a reasonably safe condition for plaintiff's use, *held*, a question of fact for the jury.

6. DAMAGES—EXCESSIVE VERDICT—PERMANENT INJURIES.

A verdict of $5,000 for personal injuries permanently preventing plaintiff, who was a teamster and trucker, from ever being able to do manual labor in the future, *held*, not excessive, although plaintiff was well advanced in years, where the testimony shows that previous to his injury he was very active, physically, for one of his years.

FELLOWS, J., dissenting.

Error to Eaton; Colgrove (Philip T.), J. Submitted January 31, 1924. (Docket No. 97.) Decided April 10, 1924.

Case by Orange A. Sink against the Grand Trunk Western Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*H. R. Martin*, for appellant.
*Arthur E. Kidder*, for appellee.

BIRD, J. Plaintiff was engaged in teaming and trucking in the city of Hastings. On November 25, 1921, he drove his truck to Lansing and returned on the train. He left Lansing on defendant's midnight train for Charlotte. He arrived there about 1:15 a. m. When he left the train at Charlotte he went into defendant's station and inquired of the agent in charge what time the Michigan Central train would go north to Hastings, and was informed that it would leave about 4 a. m. The Michigan Central station was over a block away. In the following he details what he did and said after he reached the station:

"When I first got off the train and went into the station, I went to the desk of the ticket agent and

asked him when the train went to Hastings, and he told me 4 something, and I said 'it is raining to beat the band and I guess I will stay until pretty near train time and it may not be raining so hard' because I did not want to get my suitcase wet, and he said 'yes, that is all right.' "

After remaining in defendant's station for a time, he inquired where he could get a lunch.   The agent directed him to a nearby lunch counter.   He secured his lunch and returned at once to the station.   While on this errand he left his baggage in the station with the assurance from the agent that it would be safe. Later, at his request, the agent directed him how to reach the toilet; he advised him what door to go out of, also the direction, and that there was a light burning in the toilet.   He followed the agent's directions and reached the toilet without incident.   When he returned it was very dark and he had difficulty in seeing the ground.   A short distance from the toilet the walk or path split and he followed the wrong path and fell into a pit 20 feet long, 10 feet wide and 4½ feet deep, which had been excavated near the station for a new toilet and left unguarded, thereby greatly injuring himself.   Plaintiff brought this suit to recover for his injuries, counting on the negligence of defendant in failing to keep its station grounds reasonably safe for the use of its patrons.   The jury awarded him a verdict.

Defendant's assignments raise two questions:

(1) That plaintiff was a mere licensee and defendant was not obliged to keep its premises reasonably safe for him.

(2) That the verdict is excessive.

1. The question whether plaintiff was an invitee, as claimed, or whether he was a licensee, is not real easy of solution.   It is clear and is not disputed that when plaintiff was on defendant's train, while he was leaving the train and going to and into the station,

and for a reasonable time after he entered the station, he was a passenger.   When he remained beyond such reasonable time as was necessary to enable him to leave defendant's premises, did he then become a licensee or an invitee?   If he became a licensee the defendant was under no obligation to keep its station grounds safe for his benefit.   He was bound to accept the premises as he found them.   33 Cyc. p. 806.   If he were an invitee then it became a question of fact whether defendant kept its premises in a reasonably safe condition for his use.   22 R. C. L. p. 919.   In discussing the question as to who are invitees, Ruling Case Law observes that:

"While the rule as to the duty of a railroad company toward a trespasser is, as has been seen, also applicable in the case of a bare licensee, one who goes on the premises of a railroad company to transact business with it or its agents or to transact business in the operation of the road, or who is there by invitation of the company express or implied, is lawfully there and the railroad company, like any other owner or occupant, owes him at least the duty of using reasonable or ordinary care for his safety.   If a railroad company expressly invites or tacitly permits persons to be upon its premises, or in or about its machinery, the company owes to such persons the duty, not only not to injure them when their presence becomes known, but also to anticipate their presence at the time when or the place where such invitation or permission would probably bring about their presence, and to take such measures as ordinary prudence would require to prevent injury to them if they are in fact present." 22 R. C. L. p. 919.

After much examination of the authorities we are of the opinion that plaintiff was at least an invitee on defendant's station grounds when he was injured. Among the items which have brought us to this conclusion are the following:

(a)  Plaintiff's business relation with defendant began as a passenger and continued as such until a

reasonable time had elapsed after entering defendant's station.

(*b*) On account of the inclemency of the weather plaintiff asked for and was given express permission by the agent in charge to remain in the station for a time.

(*c*) The agent was informed as soon as plaintiff arrived that he was en route to Hastings, and that he was awaiting the arrival of the connecting carrier, and he extended to plaintiff the courtesy and conveniences which were doubtless reciprocal with both railroads in their daily exchange of passengers.

(*d*) Plaintiff was not in the position of a traveler who had reached his journey's end, but was in the position of a traveler who had reached a break in his journey and was obliged to remain at the station of defendant, or that of the connecting carrier. He was neither a trespasser nor a loiterer, nor was he remaining on defendant's premises solely for his own pleasure or amusement. He was remaining by reason of his former relation with defendant as a passenger and because of the express permission of the agent in charge.

It is argued, however, that the relation of invitee could not exist, because there was no mutual advantage in the relation. In a broad view there was a mutual advantage, an advantage to plaintiff in housing him from the storm and darkness, and an advantage to defendant in making passengers comfortable who chose to include this connection in their itinerary. Upon this phase of the law it is said:

"As to whether one is an invitee, at least by implication, or a licensee has been held by some authorities to depend upon the existence or want of a common interest or mutual advantage on the part of the carrier and one upon his premises. If such exists the person is inferred to be an invitee, whereas in the absence of such elements, and where one is upon the premises only for pleasure or for his own benefit, he is to be deemed a licensee. This principle cannot, however, be said to furnish an invariable test by which it may be determined in every case whether a person is upon

the premises of the carrier under an implied invitation, but the existence of an invitation must be determined by the circumstances of each case." 4 R. C. L. p. 1052.

The adjudicated cases bearing on this question, which have come to our attention, are not numerous. The only case in this court, which has come to our attention, having any bearing on the present one, is the case of *McKone* v. *Railroad Co.*, 51 Mich. 601 (47 Am. Rep. 596). In that case plaintiff went to the Chelsea station to meet his wife. Her train was coming in as he reached the station. Being urged by a call of nature and no urinal being near he stepped to a secluded spot from four to eight feet on defendant's ground away from where the passengers would alight, and fell into a deep hole and was injured. In a suit which followed the circuit judge directed a verdict for defendant. In reversing the judgment it was said in part:

"If we believe the evidence, which is undisputed, the plaintiff was not a trespasser. His occasion was not only lawful, but it was obviously within the license which the company had extended to the public. It is admitted in argument that had his presence at the station been in the character of a hackman engaged in running for passengers, his stepping aside would not have been wrongful, and the duty of the company would have extended to him. We think it would be straining common sense to make such a distinction as is implied here. He was a customer within the essence of the rule just mentioned. The company was bringing his wife to him, and he went to receive and protect her. Had his errand been to receive a bale of goods, or a horse, no one would doubt that he had all the rights of a customer, and it seems little less than preposterous to contend that the right was not simply different or inferior, but absolutely wanting, because it was his wife that he went for.

"We think the evidence had a tendency to establish a liability, and that the case should have been submitted to the jury."

The court does not expressly determine whether McKone was a licensee or an invitee, but the inference is that the court regarded him as an invitee. It will be noted that in this case the advantage was not mutual as between the company and McKone, unless a broad view of it is accepted.

The case of *Klugherz* v. *Railway*, 90 Minn. 17 (95 N. W. 586, 101 Am. St. Rep. 384), is one which has some bearing on the case at issue. The plaintiff went to defendant's station to discuss a matter of business with a Mr. Bates, who intended to become a passenger on defendant's train. He arrived at the station an hour and ten minutes before the train was due. While waiting for Mr. Bates to appear he was injured by a cable which was being used in unloading sand from flat cars near the station. He sued the company and it was held that defendant owed plaintiff the duty of exercising reasonable care to protect him. It was said in part:

"We are unable to see why the duty of the railroad company to the public should be confined to those having strictly business relations with the company. There is no reasonable distinction between the rights of a person visiting the premises for the purpose of escorting another to a departing train, and the rights of one who goes there for the purpose of talking with a departing person on a business matter. There is a wide difference between the use of the premises with such motives and those of idle curiosity and merely to kill time. While the company cannot be expected to be continuously on its guard as against loiterers and trespassers, yet it is reasonable that it should anticipate that the station-house and depot grounds may be used as a place of meeting by people for various lawful purposes at or about the time of the arrival and departure of trains."

This case does not come within the mutual advantage doctrine. The plaintiff had no business with the railroad company. His errand was solely with a prospective passenger.

Another case similar to the one last cited is *Cogswell* v. *Railway Co.*, 20 L. R. A. (N. S.) 837 (23 Okla. 181, 99 Pac. 923). Plaintiff went to defendant's station to meet a passenger on an incoming train with whom he desired to discuss a matter of business. While awaiting the arrival of the train he stepped into a hole in a defective platform and was injured. He was permitted to recover for his injuries, notwithstanding it was urged that the company owed no duty to plaintiff to keep its platform in a reasonably safe condition, because he was a licensee. In this case the only object that plaintiff had in going to defendant's premises was to serve a purpose of his own.

The case of *Whitman* v. *Railway Co.*, 171 Iowa, 277 (153 N. W. 1023), is more nearly like the present case than any that has been called to our attention. It is difficult to draw any distinction between it and the present case. For the purpose of showing the similarity, a part of the statement of facts is quoted, and also the concluding portion of the opinion:

"This is an action to recover for personal injuries which the plaintiff claims she sustained in attempting to pass from defendant's waiting room on the evening of September 18, 1910. It appears that the plaintiff was a passenger on defendant's railway from Waverly to the town of Tripoli, Bremer county, Iowa; that she arrived at the town of Tripoli in the evening, and went immediately from the train to the station house for the purpose of waiting the coming of her husband. After waiting a short time at the station house, in the waiting room, it became dark. No lights were in the waiting room, or about the station house, except one in the ticket office, where the station agent was at work. When she went to the station house to wait for her husband, she asked the ticket agent, in charge of the station, whether any of her people had been in town that day, and he said they had, but had gone home. She asked him then if she might wait there in the station house, and he said:

"'Yes. I am going to supper, and will be back in a little while. You can stay here.'

"After she had remained in the station house a short time, she went to the hotel to get her grip, which some one had carried there. She returned, however, with her grip to the depot. When the agent returned from supper, she asked him if she could use the telephone to call her husband. The agent told her she had better go to the hotel and telephone from there, so she started to leave the waiting room for that purpose, leaving her grip behind. In passing out of the door, she fell and received the injuries of which she complains. * * *

"When the plaintiff left the defendant's train and entered defendant's waiting room, and with the permission of the company remained there, awaiting transportation to her home, the company owed her some duty—a duty at least to exercise reasonable care to see that the waiting room was in a condition that rendered it reasonably safe, not only for her while remaining there, but in a condition reasonably safe for her to pass from the depot when the time arrived for her departure.

"It may be admitted that she was not a passenger, but she surely was not a trespasser. She was there for a legitimate purpose, growing out of her previous relationship with the company. She was there at least with the knowledge and consent of the company and out of this relationship grew a duty to her personally, and a failure to exercise reasonable care in the discharge of this duty constituted actionable negligence. Nowhere did the court put the thought to the jury specifically that the company owed the plaintiff any duty."

*Chicago, etc., R. Co.* v. *Wood,* 44 C. C. A. 118, 104 Fed. 663, is an interesting case with some bearing on the question. Nancy Wood was a passenger on plaintiff's railway and arrived at Whitewater at 4 a. m. It was dark and misty. There were no lights and no agent at the station. Soon after her arrival, in an attempt to find a toilet, she fell from a high platform and was injured. Mrs. Wood testified at the trial

that before she fell and injured herself she had decided in her own mind to remain in the station until daylight.    The defense urged this resolution upon her part to remain until morning as a defense, claiming that this changed her relation to the company, but this argument was overruled and she was permitted to recover.

While the present case is somewhat close and one not free from doubt, we think, upon the whole record, the judgment of the trial court ought to be affirmed.

2. Plaintiff recovered a judgment of $5,000.    This is said to be excessive.    Medical men gave it as their opinion that his injuries were permanent and that he would not be able to do manual labor in the future. Plaintiff was well advanced in years, but the testimony shows him to have been very active, physically, for one of his years.    We do not feel that we should disturb the verdict of the jury.

The judgment is affirmed.

CLARK, C. J., and McDONALD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred with BIRD, J.

FELLOWS, J. (*dissenting*).    I am persuaded that upon this record plaintiff was but a licensee and that a verdict should have been directed for the defendant.