STATE OF IOWA, Appellee, v. HAROLD PROOST, Appellant.

No. 44121.

AUGUST 5, 1938.

REHEARING DENIED NOVEMBER 25, 1938.

John H. Mitchell, Attorney General, Buell McCash, Spec.

Asst. Attorney General, Leon P. Molloy, County Attorney, and Raymond Lynch, Asst. County Attorney, for appellee.

P. B. Holleran and A. G. Lollich, for appellant.

MILLER, J.—Main Avenue in the City of Clinton runs east and west, and is intersected by Cleveland Street running north and south. An extra wide alley, designated as Buell Avenue, is the first east and west thoroughfare south of Main Avenue, which alley likewise intersects Cleveland Street. On September 11 and 12, 1936, one Clem Holdgrafer operated a filling station at the southeast corner of Main Avenue and Cleveland Street. The building faced north on Main Avenue, having a canopy in front under which the gas pumps were located. The front part of the building was used as the office, immediately south of which, separated only by a glass partition, was the grease rack and storage room. Double doors in the west wall of the storage room opened on Cleveland Street, and a door in the south wall of the storage room opened into a large back room occupied by Frank Proost, father of the defendant, which room extended to Buell Avenue. Immediately east of the Holdgrafer filling station were situated the following buildings in order: the Horton Garage, a restaurant referred to as the "Avon", and the home of appellant. In the wall between the Horton Garage and the office of the filling station, was located a window about 2½ feet square, which raised up and down. On September 11, 1936, a drizzling rain fell on and off all night. At about nine o'clock that evening Holdgrafer, in the presence of his daughter Anna, and the defendant, closed his place of business, locked all the doors, including the double doors leading from the storage room to Cleveland Street; and observed that the window between his office and the Horton Garage was closed. He took some seventy-five or eighty dollars out of the cash register and gave it to his daughter, who in turn placed the same in a metal cabinet or safe in the front of the office; resulting in the cabinet containing approximately $290. The daughter then closed the cabinet or safe, with the assistance of defendant. Holdgrafer was awakened by the defendant at his home at about 3:20 o'clock a. m. on September 12th, who rapped vigorously on the door and stated, "Clem, your place has been robbed; your safe is gone. Have you a cigarette?" Holdgrafer dressed and went to

the filling station and found the double doors to the west standing open and the metal cabinet or safe gone.

On April 15, 1937, an indictment was returned against the defendant and one Marvin Hendershott, charging them with the crime of breaking and entering the said filling station at said time. To this indictment Marvin Hendershott entered his plea of guilty and was thereupon sentenced to a term in the State Reformatory. The defendant herein entered his plea of not guilty to this indictment, was thereafter tried, convicted and sentenced, from which judgment and sentence this appeal is taken.

Marvin Hendershott was a witness on behalf of the State, and testified in substance that he met appellant at appellant's home between 6:30 and 7 o'clock p. m., September 11, 1936; that they were in each other's company from then on until about 3 o'clock a. m., September 12, 1936; that at about midnight they entered the filling station by entering the Horton Garage, opening the window in the wall between the garage and the office of the filling station, and going through the same; that they then carried the cabinet or safe from the office to the northwest corner of the grease room; that they then returned to the street, proceeding back through the window and the garage building; that they later re-entered the filling station by the same method, whereupon appellant opened the double doors leading to Cleveland Street, while the witness watched for Mr. Doran, a merchant policeman in that vicinity; that they then went out of the double doors, got into appellant's automobile, drove it around, and parked in the driveway just south of the Horton Garage and just north of Buell Avenue; that it was then about 1:30 a. m. and they then saw Doran, the policeman, come around from behind a lumber company building directly across the street, and that they had a conversation with Doran concerning prowlers, or snoopers; that as soon as Doran left, they got into the car, parked it alongside the double doors on Cleveland Street, went into the building, picked up the safe or cabinet, placed it in the car and drove to a spot near what is known as Root Memorial Park, where they pushed the cabinet out into the road and backed the car around so the headlights were on it, whereupon appellant took a hammer, cracked it open and found $200; that they then drove to the Coryell gas station, had some gas placed in the car, and divided the

money, each receiving $100; that they then went to the City Lunch Cafe, and remained there until about three o'clock in the morning, then they separated, the appellant telling the witness he was going home.

I. Upon the completion of the State's case, a motion for directed verdict was made by appellant, which motion was overruled. This motion was again renewed at the close of all the testimony, and again overruled. Appellant in his first assignment of error relied upon for reversal, claims that the action of the court in overruling said motions for directed verdict was erroneous on account of the fact that the only testimony introduced connecting appellant with the crime charged was that of the accomplice Hendershott, and that his testimony was not corroborated by other evidence tending to connect appellant with the commission of the offense charged. The record establishes without dispute that Marvin Hendershott was an accomplice, and in accordance with the express provisions of section 13901 of the Code of Iowa, the conviction cannot be sustained unless his testimony is corroborated by other evidence tending to connect appellant with the commission of the offense. The section provides as follows:

"A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

It is to be observed therefrom that the corroboration required is not sufficient if it merely shows the commission of the offense, or the circumstances thereof, but to be sufficient, such corroborating testimony must tend to connect the accused with the commission of the offense.

This court has frequently been confronted with the application of this section of the Code, and in State v. Christie, 193 Iowa 482, 187 N. W. 15, the following language is used (page 486 of 193 Iowa, page 17 of 187 N. W.):

"We have frequently had occasion to apply this section of the statute. It is not obscure or uncertain. The testimony of the accomplice must be corroborated 'by other evidence which shall tend to connect the defendant with the commission of the

offense.' Unless there is evidence which can fairly be said to tend to connect the defendant with the commission of the offense, outside of the testimony of an accomplice, then a conviction cannot be permitted to stand. Furthermore, the corroboration of an accomplice is not sufficient, under the statute, 'if it merely show the commission of the offense or the circumstances thereof.' We have held, however, that the corroboration need not be of every material fact testified to by· the accomplice. It is sufficient to meet the requirements of the statute if the accomplice is corroborated in some material fact tending to connect the defendant with the commission of the offense. State v. Cowell, 149 Iowa 460, 128 N. W. 836; State v. Dorsey, 154 Iowa 298, 134 N. W. 946; State v. Allen, 57 Iowa 431, 10 N. W. 805; State v. Hall, 97 Iowa 400, 66 N. W. 725; State v. Patten, supra, [191 Iowa 639, 182 N. W. 788].

"It is also true that the corroborating testimony of an· accomplice need not be direct. It may be circumstantial; and whether direct or circumstantial, if it corroborates the testimony of the accomplice in a material part, and tends to connect the defendant with the offense charged, it is sufficient to meet the requirements of the statute and to carry the case to jury. State v. Schlagel, 19 Iowa 169; State v. Miller, 65 Iowa 60, 21 N. W. 181; State v. Dietz, 67 Iowa 220, 25 N. W. 141; State v. Van Winkle, 80 Iowa 15, 45 N. W. 388; State v. Dorsey, supra; State v. Patten, supra."

In the consideration of this contention of appellant it is necessary that we ascertain whether there is any evidence either direct or circumstantial that corroborates the testimony of the accomplice Hendershott in a material part thereof, and which tends to connect appellant with the commission of the offense charged. Examination of the record reveals that witnesses, other than the witness Hendershott, testified that appellant was present and assisted in closing the safe or cabinet at the time Holdgrafer closed his place of business; that appellant and Hendershott left the Avon together at 1:30 o'clock a. m.; that appellant and Hendershott were seen in the alley with appellant's automobile just behind the filling station on the drizzly night in question, at about 1:30 o'clock a. m.; and that the witness Hendershott was seen sitting in appellant's automobile that evening. Appellant testified that he spent the entire

period from 9:00 o'clock that evening until about 12:30 a. m. at a tavern distant from Main Avenue and the Holdgrafer building, whereas a police officer testified that he saw the defendant on Main Avenue between the hours of 9:00 p. m. and midnight, and likewise saw him in front of the "Avon" at 11:25 o'clock p. m. Witnesses, other than Hendershott, testified that appellant reached his house at about 3:00 o'clock a. m., woke up his brother Robert Proost and informed him that the filling station had been robbed; that Robert Proost then informed the police department; that appellant, Robert and an uncle, Leo Hasp, then went to the filling station and waited until the police arrived, whereupon appellant went to the home of Holdgrafer and told him, "Your place has been robbed; your safe is gone." It is to be observed therefrom that appellant reported to Holdgrafer the extent of his loss that evening by then informing him that "your safe is gone," before Holdgrafer arrived at his place of business to confirm the statement. In conformity with our previous holdings wherein this question was involved, we are compelled to the conclusion that the corroboration was sufficient. State v. Russell, 90 Iowa 493, 58 N. W. 890; State v. Blain, 118 Iowa 466, 92 N. W. 650; State v. Patten, 191 Iowa 639, 182 N. W. 788; State v. Christie, supra; State v. Gill, 202 Iowa 242, 210 N. W. 120; State v. Loucks, 218 Iowa 714, 253 N. W. 838.

II.   The trial court in instructions Nos. 10 and 11 correctly instructed the jury as to the necessity for corroborating testimony of an accomplice, and defined an "accomplice"; following which the court gave instructions 12 and 13 as follows:

"12.   It appears in the evidence without dispute that. Marvin Hendershott, a witness for the State, was an accomplice in the commission of the offense of breaking and entering the property of Clem Holdgrafer, hence you cannot convict the defendant, Harold Proost, upon his testimony unless you find that there is other evidence in the case tending to connect the said Harold Proost with the commission of the offense in question.

"In this connection you are instructed that there is evidence in the case, other than that given by the witness Hendershott, tending to show that two men participated in the offense charged and that an automobile was used in transporting the

safe or receptacle for papers and money from the scene of the alleged breaking and entering. There is further testimony of witnesses, other than the said Hendershott, tending to show that the said Hendershott and the defendant were in the company of each other with defendant's automobile in the close vicinity of the premises alleged to have been broken and entered, sometime after midnight of September 11th, 1936, and near the time it is testified that the safe aforesaid was removed from the premises.''

''13. It is proper for you to consider the evidence referred to in the preceding paragraph of this charge when passing upon the question of whether or not Hendershott, in naming Proost as a participant in the crime admitted by him to have been committed, is corroborated by other evidence in the case tending to connect the defendant Harold Proost therewith. Unless you find that there has been shown by the evidence the corroboration of Hendershott's testimony required by the law, as hereinbefore stated, you cannot convict the defendant.''

Appellant contends that giving the two quoted instructions was erroneous, for the reasons: (1) That therein the court recites facts which militate against appellant without a recitation of facts favorable to him; and (2) that such recitation of facts upon which the State relied for corroboration would have a tendency to thereby unduly magnify the importance of the matters thus selected. The reading of instructions 12 and 13 reveals that following a statement to the jury that appellant could not be convicted upon the testimony of Hendershott unless they found there was other evidence tending to connect appellant with the commission of the offense; that the court then immediately singled out and called to the attention of the jury that there was testimony of witnesses, other than Hendershott, tending to show that Hendershott and appellant were in the company of each other with appellant's automobile in the close vicinity of the premises alleged to have been broken and entered, near the time it was testified that the safe had been removed from the premises. Following this action in specifically calling this testimony to the attention of the jury the court then directs the jury to consider the same in determining whether or not the testimony of Hendershott was corroborated by other witnesses.

Examination of the record reveals that the testimony to which the court referred therein was given by the witness Doran, who testified that he saw appellant and Hendershott with appellant's automobile at the rear of the filling station at the corner of Cleveland Street and Buell Avenue, at about 1:30 a. m., and that he then had a conversation with them. Appellant in his testimony, in reference thereto, testified that he was in the Avon talking to the proprietor, a Mr. Irwin, and at about 1:30 o'clock a. m. Irwin unlocked the kitchen door, called appellant and said someone was out there, that he and Hendershott went out to investigate and then met Doran, and that the conversation with Doran took place at the rear of the Avon, and right back of appellant's home, and that his automobile was then parked in the yard of his home. It is to be observed therefrom that no mention is made by the court in this instruction of the testimony offered by appellant as to the transaction, or no statement to the effect that said testimony could be considered for any purpose other than to establish corroboration.

Examination of our prior decisions involving instructions containing recitations of facts or circumstances which have probative force upon issues tendered, reveals that instructions reciting facts militating against one party, without a recitation of facts favorable to his contention, are improper and erroneous; and likewise reveals that an instruction which gives undue prominence to evidentiary facts to be determined by the jury is erroneous, as it thereby unduly magnifies the importance of the particular testimony thus selected for specfic mention.

"The office of an instruction is to state the rule of law applicable and pertinent to the matter to be determined, and not to marshal the evidence, or by special mention to give undue prominence to any particular phase or feature of the fact case-made by either party to the controversy." Kelly v. Railway Co., 138 Iowa 273, 277, 114 N. W. 536, 538, 128 Am. St. Rep. 195.

In the case of Van Norman v. Modern Brotherhood, 143 Iowa 536, 121 N. W. 1080, the following language is used (page 551 of 143 Iowa, page 1085 of 121 N. W.) :

"The practice of embodying in an instruction a recitation of facts on which a party relies is not to be encouraged because of the tendency to thereby unduly magnify the importance of the matters thus selected for specific mention."

Again in the case of Whitman v. Railway Co., 171 Iowa 277, 153 N. W. 1023, the court used the following language (page 281 of 171 Iowa, page 1025 of 171 N. W.) :

"The court should not emphasize or give undue prominence to evidentiary facts, the existence or nonexistence of which must be settled by the jury. See, Campbell v. Wheeler, 69 Iowa 588, 29 N. W. 613; Doyle v. Burns, 138 Iowa 439, 114 N. W. 1; West v. Railway Co., 77 Iowa 654, 35 N. W. 479, 42 N. W. 512; Van Norman v. Modern Brotherhood, 143 Iowa 536, 121 N. W. 1080; McBride v. Railway Co., 134 Iowa 398, 109 N. W. 618, * * *

"While we deprecate the recital in instructions of facts and circumstances which have probative force upon the issues tendered, because they tend to give undue prominence to the facts recited, we are clearly of the opinion that, if the court undertakes to recite the facts disclosed by the evidence which have probative force upon the issues tendered, it must recite all the facts favorable to the party as well as those which militate against his claim. We most emphatically dissent from the practice of reciting facts which militate against one party, without a recitation of the facts favorable to his contention, and reciting facts which are favorable to the other party's contention, without a recitation of facts disclosed by the evidence which militate against his contention, and we think that is the condition that confronts us here."

In the case of Conover v. Hasselman, 199 Iowa 661, 202 N. W. 502, an action for collection of two promissory notes, wherein plaintiff alleged he was the holder in due course, this court, in commenting upon an instruction containing reference to facts, uses the following language (page 665 of 199 Iowa, page 503 of 202 N. W.) :

"An instruction directed that, in determining whether appellee was a holder in due course, the jury should take into consideration 'all of the facts and circumstances shown by the evidence as surrounding the parties and the purchase of the notes at the time they were purchased, the amount paid for said notes,' and thus determine the fact. This gave undue prominence to the single fact of the amount paid; and the instruction was for that reason erroneous. Whitman v. Chicago, G. W. R. Co.,

171 Iowa 277, 153 N. W. 1023; Haman v. Preston, 186 Iowa 1292, 173 N. W. 894.''

The application of the settled law of this state, as revealed by the quotations set out, convinces us that the contention of appellant as to these instructions, is meritorious. The instructions plainly show that the court failed to call attention to any evidence or inference therefrom favorable to appellant, but specifically directed the jury to give consideration to that evidence as corroboration of the testimony of Hendershott; and likewise, these two instructions magnify the particular matters of testimony therein referred to and give them undue prominence. We are therefore compelled to hold that the giving of these instructions on the part of the trial court was erroneous.

III. In instruction No. 17 the trial court gave an instruction relative to impeachment, therein stating among other things that a witness may be impeached by proving that he has been convicted of a felony. Appellant claims error on the part of the trial court in that he failed to define a felony. No request was made for an instruction of this kind and we are satisfied that this contention is without merit. Hendershott in his testimony admitted his plea of guilty, and his incarceration in the reformatory. Likewise, the term ''felony'' is one of common parlance and nontechnical in nature. In State v. Penney, 113 Iowa 691, 84 N. W. 509, this court disposed of a similar complaint in these words (page 697 of 113 Iowa, page 511 of 84 N. W.):

''Another claim is that the court should have defined the word ''felonious'', used in the charge. We do not think there was call for defining a word in such common use. In re Convey's Will, 52 Iowa 197, 2 N. W. 1084.''

On account of the error in instructions 12 and 13, it follows that this case must be and the same is hereby reversed.—Reversed.

SAGER, C. J., and HAMILTON, ANDERSON, KINTZINGER, DONEGAN, and MITCHELL, JJ., concur.

RICHARDS, J., concurs in result.