# IN THE COURT OF APPEALS OF IOWA

No. 18-0314
Filed February 6, 2019

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**JEFF LEE ALTMAYER,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Jasper County, Terry R. Rickers, Judge.

Jeff Lee Altmayer appeals his convictions for kidnapping in the first degree, sexual abuse in the second degree, and enticing a minor. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Considered by Vogel, C.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Chief Judge.**

Jeff Lee Altmayer appeals his convictions for kidnapping in the first degree, sexual abuse in the second degree, and two counts of enticing a child. He argues his trial counsel was ineffective for failing to object to a jury instruction regarding his out-of-court statements, and the court abused its discretion in admitting other-acts evidence and erred in submitting a jury instruction regarding the complaining witness. We find both instructions correctly state the law and did not result in prejudice and the other-acts evidence was proper for proving identity. Therefore, we affirm.

## I.      Background Facts and Proceedings

On August 17, 2016, two eleven-year-old girls, N.D. and C.F., were walking near their homes in Colfax. According to N.D.'s testimony, as they walked a man stopped his vehicle next to them, showed them a one-hundred-dollar bill, and asked for help doing yardwork. The man said he only had room for one of them in his vehicle. N.D. decided she wanted the money and entered his vehicle. When she sat in the front passenger seat, she noticed a lawn chair in the backseat and air fresheners in the vents. The man told her they needed to go to Des Moines for the yardwork. As he drove them, he began touching her. He first touched her with his hand on her breast over her clothes; he then touched her with his hand "on the area where pee comes out" over her clothes; and finally, he grabbed her hand, "put it on his area where pee comes out," and told her to squeeze. N.D. resisted and demanded he let her out of the car. He eventually released her a few blocks away from where he picked her up and drove away. N.D. walked to her grandparents' nearby house, "crying and shaking." She told her grandfather about

the incident, and he contacted the police. The police could not locate the man at the time. Sometime later, N.D. saw Altmayer's picture on the Internet in a news story and recognized him as the man who touched her. At trial, she identified Altmayer as the man who touched her.

On November 16, 2016, eleven-year-old S.L. and her friend were walking home from school in Onawa. As they walked, S.L. testified, a man stopped his car near them and offered "like a one-thousand-dollar bill" if they entered his car. They refused and threatened to call the police, and the man drove away. Around the same time, six-year-old P.N. was also walking home from school in Onawa. As she walked, she testified, a man stopped his car near her and asked if she "wanted a hundred dollars." She ran away to her house and explained what happened. A family friend was in the house at the time, and he immediately left to drive around the area in search of the man. The family friend soon located the man in his vehicle, contacted police, and followed the man until law enforcement stopped him. Law enforcement identified the man as Altmayer. They found twelve one-hundred-dollar bills on his person. They also searched his vehicle and found multiple air fresheners in the vents and a lawn chair.

After Altmayer was taken into custody, Special Agent Michael Roehrkasse with the Iowa Division of Criminal Investigation was contacted. Special Agent Roehrkasse had previously investigated the incident involving N.D. and C.F. He and another agent interviewed Altmayer that night, and he testified about the contents of the interview. Altmayer told them he lives in Ankeny. His job duties include traveling to different places to inspect vehicles. He acknowledged talking to two girls in Onawa—apparently S.L. and her friend—but he claimed he only

asked them if they knew of a nearby deli that served a "hundred-dollar sub," which is his term for a hot pastrami sandwich.

On February 16, 2017, Altmayer was charged with kidnapping in the first degree,[1] sexual abuse in the second degree,[2] and two counts of enticing a minor[3] related to the encounter with N.D. and C.F. Trial was held January 16 to 19, 2018. The State presented witnesses from both Colfax and Onawa, including N.D., C.F., N.D.'s grandparents, S.L., P.N., and law enforcement officers. During N.D.'s testimony, she viewed photographs of Altmayer's vehicle and the lawn chair and air fresheners found inside his vehicle after the Onawa incident, and she testified they "look[ed] like" the objects she saw when she encountered Altmayer. The State also called Dion Morrow, an analyst with Verizon Wireless, who testified company records show a device connected to the number for Altmayer's personal mobile phone ended a call no more than ten miles from an address in Colfax on August 17, 2016, at 5:49 p.m. The jury found Altmayer guilty on all four counts.

---

[1] Kidnapping in the first degree occurs "when the person kidnapped, as a consequence of the kidnapping, . . . is intentionally subjected to torture or sexual abuse." Iowa Code § 710.2 (2016).

> A person commits kidnapping when the person either confines a person or removes a person from one place to another, knowing that the person who confines or removes the other person has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:
> . . . .
> 3. The intent to . . . subject the person to a sexual abuse.

*Id.* § 710.1; *see also id.* § 709.1 (defining sexual abuse).
[2] Sexual abuse in the second degree occurs when a person commits sexual abuse and "[t]he other person is under the age of twelve." Iowa Code § 709.3(1)(b). Sexual abuse occurs when a person performs a sex act with a minor. *Id.* § 709.1(3). A "sex act" includes "[c]ontact between the finger or hand of one person and the genitalia or anus of another person." *Id.* § 702.17(3).
[3] Enticing a minor occurs "when, without authority and with the intent to commit sexual abuse or sexual exploitation upon a minor under the age of thirteen, the person entices or attempts to entice a person reasonably believed to be under the age of thirteen." Iowa Code § 710.10(1); *see also id.* § 709.1 (defining sexual abuse).

On February 21, 2018, the court sentenced him to life in prison for kidnapping, a term of incarceration not to exceed twenty-five years for sexual abuse, and terms of incarceration not to exceed ten years for each count of enticing a minor. His sentences for kidnapping and sexual abuse were run concurrently, and his sentences for enticing a minor were run consecutively to each other and consecutively to his other sentences. He now appeals.

## II. Standard of Review

We review alleged errors in jury instructions for correction of errors at law. *State v. Tipton*, 897 N.W.2d 653, 694 (Iowa 2017). We review the admission of other-acts evidence for abuse of discretion. *State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014).

## III. Out-of-Court Statements

Altmayer argues his trial counsel was ineffective for failing to object to a jury instruction regarding his out-of-court statements. "Ineffective-assistance-of-counsel claims require a showing by a preponderance of the evidence both that counsel failed an essential duty and that the failure resulted in prejudice." *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016). "We review jury instructions as a whole to determine whether the jury instructions correctly state the law." *Tipton*, 897 N.W.2d at 694.

Altmayer claims error in jury instruction number ten, which states:

> You have heard evidence claiming Defendant made statements before the trial. If you find such statements were made, you may regard the statements as evidence in this case the same as if he had made such statements under oath during the trial.

While Altmayer acknowledges his out-of-court statements were properly admitted under Iowa Rule of Evidence 5.801(d)(2), he argues instruction number ten and the use of his out-of-court statements violate his protection from self-incrimination under the United States Constitution and his rights to due process under article I, sections nine and ten of the Iowa Constitution. "The Fifth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that no person, 'shall be compelled in any criminal case to be a witness against himself.'" *State v. Marks*, 644 N.W.2d 35, 37 (Iowa Ct. App. 2002) (quoting U.S. Const. amend. V). The Fifth Amendment protects communications that are testimonial, incriminating, and compelled. *State v. Iowa Dist. Ct.*, 801 N.W.2d 513, 518 (Iowa 2011). Compulsion generally requires state-imposed sanctions or penalties for using the privilege. *Id.* Altmayer has not identified any out-of-court statements he gave under compulsion. *See id.* Rather, he conceded all of his out-of-court statements he identified were freely given. Therefore, he has not shown instruction number ten and the use of his out-of-court statements violated his right against self-incrimination and right to due process under the constitutions of the United States or Iowa.

Second, Altmayer argues instruction number ten misstates the law. He argues the instruction falsely informs the jury his out-of-court statements—and no other out-of-court statements—must receive the same weight as statements made in court and under oath. He specifically points to testimony from N.D. and C.F. about the Colfax incident and testimony from Special Agent Roehrkasse about his interview after the Onawa incident, and he alleges instruction number ten

erroneously instructs jurors to treat these statements the same as those made under oath.

We find instruction number ten correctly states the law. Nothing in the instruction commands the jury to consider his out-of-court statements as given under oath; rather, instruction number ten informs jurors they "may regard" his out-of-court statements the same as those given under oath. The instruction does not assign credibility to his out-of-court statements in relation to those given in court and under oath. Instruction number ten also allows jurors to decide he never made the out-of-court statements. Similarly, instruction number eight informs jurors they "may believe all, part or none of any witness's testimony," and it provides factors to "consider in deciding what testimony to believe." As such, instruction number ten and the instructions as a whole merely allow the jury to consider Altmayer's out-of-court statements as part of the entire body of evidence, as allowed under Iowa Rule of Evidence 5.801(d)(2).

Furthermore, even if we were to determine instruction number ten misstates the law, no prejudice resulted. Excluding Altmayer's out-of-court statements, the record contains strong evidence supporting Altmayer's guilt under all charges. N.D. and C.F. testified they were both eleven years old at the time. They both also testified he stopped his vehicle near them and enticed them by showing a one-hundred-dollar bill. N.D. testified she then entered his vehicle, where he confined her and sexually abused her by touching her vagina with his hand and placing her hand on his penis. N.D. identified him at trial and recognized his vehicle and objects found inside from photographs taken after the Onawa incident. Law enforcement also found several one-hundred-dollar bills on Altmayer after the

Onawa incident. From this evidence, the jurors could conclude he performed the specified acts with the necessary intent to commit kidnapping, sexual abuse, and enticing a minor. Iowa Code §§ 710.2, 709.3(1)(b), 710.10(1). Therefore, even if instruction number ten misstates the law, Altmayer cannot show prejudice resulted.

We find Altmayer's trial counsel had no duty to object to instruction number ten, both because it did not violate his protection from self-incrimination and because it did not misstate the law. Further, even if it did misstate the law, he has not shown prejudice resulted. Accordingly, his counsel was not ineffective for failing to object to instruction number ten.

## IV. Other-Acts Evidence

Next, Altmayer argues the district court abused its discretion in admitting evidence from the Onawa incident. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Iowa R. Evid. 5.404(b)(1). However, "[t]his evidence may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2). In order to be admissible, other-acts evidence must satisfy a three-step analysis. *Putman*, 848 N.W.2d at 8–9.

First, the evidence must be "relevant to a legitimate, disputed factual issue." *Id.* at 9. Here, the Onawa evidence was offered for such a purpose, specifically to show the same person committed the acts in Colfax. When other-acts evidence is offered to prove identity, "the other acts must be 'strikingly similar' or of a 'unique nature.'" *Id.* at 11 (quoting *In re J.A.L.*, 694 N.W.2d 748, 753 (Iowa 2005)). The

evidence from both Colfax and Onawa indicates a man stopped a similar vehicle near pre-teen girls and offered them a one-hundred-dollar bill to enter his vehicle. As such, the evidence was relevant to a legitimate, disputed factual issue, and it was sufficiently similar or unique. *See id.* at 9, 11.

Second, there "must be clear proof the individual against whom the evidence is offered committed the bad act or crime." *Id.* at 9 (quoting *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004)). The clear proof standard is satisfied if the evidence is sufficient "to 'prevent the jury from engaging in speculation or drawing inferences based on mere suspicion.'" *Id.* (quoting *State v. Taylor*, 689 N.W.2d 116, 130 (Iowa 2004)). "Testimony of credible witnesses can satisfy the clear-proof requirement." *Id.* The State presented several witnesses, including S.L. and P.N., who testified to Altmayer's actions in Onawa. This testimony provides clear proof Altmayer committed the bad acts in Onawa.

Third, the evidence is admissible if its "probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *Id.* (quoting *Sullivan*, 679 N.W.2d at 25). Under this step, we consider multiple factors:

> the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.

*Id.* at 9–10 (quoting *Taylor*, 689 N.W.2d at 124). Altmayer specifically challenges the evidence under the first factor, claiming the evidence from Onawa was not needed to prove his identity in light of the available evidence from Colfax. *See id.* He points to N.D.'s description of his vehicle, her eventual identification of him as the offender, and the phone records placing him near Colfax during the time in

question. Although N.D.'s testimony was strong, the other-acts evidence was necessary to establish identity. N.D. provided a general description of the vehicle she saw in Colfax, and at trial she could only say Altmayer's vehicle "look[ed] like" that vehicle. She only recognized Altmayer as her assailant from a photo in the news sometime after the incident. While phone records placed him near Colfax at the time, these records could only identify his location within a ten-mile radius. Furthermore, the district court limited the potential for the jury to use Onawa evidence for improper purposes by instructing jurors, both verbally and in writing, to use the evidence of other wrongful acts only for purposes of establishing identity. *See State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010) ("We presume juries follow the court's instructions.").

We find the Onawa evidence was relevant to the legitimate issue of identifying the Colfax offender, clear proof supports the conclusion Altmayer committed similar bad acts in Onawa, and the probative value of the Onawa evidence is not substantially outweighed by the danger of unfair prejudice. *See Putman*, 848 N.W.2d at 9. Therefore, the court did not abuse its discretion in admitting the other-acts evidence.

## V. Complaining-Witness Instruction

Finally, Altmayer claims the court erred in submitting an instruction on N.D.'s testimony. Instruction number twenty-five states:

> You should evaluate the testimony of N.D. the same way you evaluate the testimony of any other witness. The law does not require that the testimony of N.D. be corroborated in order to prove that she was sexually abused. You may find the Defendant guilty of Sexual Abuse if N.D.'s testimony convinces you of guilt beyond a reasonable doubt.

Altmayer argues this instruction unduly emphasizes N.D.'s testimony. *See State v. Milliken*, 204 N.W.2d 594, 596 (Iowa 1973) ("[A]n instruction which gives undue prominence to evidentiary facts to be determined by the jury is erroneous, as it thereby unduly magnifies the importance of the particular testimony thus selected for specific mention." (quoting *State v. Proost*, 281 N.W. 167, 170 (Iowa 1938))). Instruction number twenty-five accurately reflects Iowa Code section 709.6, which prohibits instructing "the jury to use a different standard relating to a [sexual abuse] victim's testimony than that of any other witness to the offense or any other offense." Furthermore, the instruction does not unduly emphasize N.D.'s testimony because it explicitly applies the same standard to N.D. as all other witnesses and it reminds jurors they must find Altmayer guilty beyond a reasonable doubt to convict him of sexual abuse. Therefore, the district court did not err in submitting instruction number twenty-five.

## VI.    Conclusion

Altmayer's trial counsel was not ineffective for failing to object to the instruction on out-of-court statements because it accurately stated the law and did not result in prejudice. The court did not abuse its discretion in admitting the other-acts evidence because it properly related to identity. The court also did not err in submitting the complaining-witness instruction because it accurately stated the law and did not unduly emphasize the witness's testimony. Therefore, we affirm.

**AFFIRMED.**