IN THE MATTER OF THE WILL OF LAWRENCE CONVEY.

1. **Instruction**: USE OF FOREIGN WORD: ONUS. The word *onus*, though Latin, has been incorporated into the English language, and its use in an instruction is not error.

2. **Will**: EXECUTION: WITNESSES. It is not essential that the witnesses to a will should see the testator subscribe the instrument; that he acknowledges or adopts the signature in their presence is sufficient.

3. ⸺: ⸺: SIGNATURE. The fact of signature, or the formal execution of a will, as distinguished from its acknowledgment or adoption, may be shown by testimony other than that of the subscribing witnesses.

4. ⸺: COMPETENCY OF TESTATOR: UNDUE INFLUENCE. Instructions as to the competency of the testator, and proof of undue influence, considered and approved.

*Appeal from the Keokuk Circuit Court.*

SATURDAY, OCTOBER 25.

THIS was a proceeding for the probate of a will. Lincoln Convey, son of the decedent, contested the sufficiency of the will, on the ground that the instrument was not executed by Lawrence Convey; that he was of unsound mind, was under the influence of intoxicating liquors, and his signature was procured through duress and undue influence. The cause was tried to a jury, and a verdict found against the contestant, and the will was admitted to probate. The contestant appeals.

*Mackey, Harned & Fonda*, for appellant.

*Woodin & McJunkin* and *Sampson & Brown*, for appellee.

BECK, CH. J.—I. The will in question disposes of all the property of the decedent, without making any provision for the contestant, a minor son, further than it bequeaths him a silver watch, or in case of its loss, thirty dollars. The other beneficiaries of the will were other children and the mother of the deceased. There was evidence tending to show that

the deceased, at the time the will is alleged to have been executed, was of unsound mind, that he was in the last stage of consumption, and was under the influence of intoxicating liquors, which he used as a remedy, or rather as a stimulant to prolong his life. The witnesses to the will were not present when the testator subscribed the instrument.

II. Upon the issue involving the fact of the due execution of the will, the court gave the jury the following instructions:

"2. In this State it is provided by statute that any person of full age and sound mind may execute a will, which, to be valid, must be in writing, witnessed by two competent witnesses, and signed by the testator, or by some person in his presence, and by his express direction.

"3. It, therefore, devolves upon the proponent (that is, the party seeking to have the will established) to show by the evidence that at the time of the execution of the will or instrument in question the testator, Lawrence Convey, was of sound mind; that he signed said instrument as, and for, his last will, and that such will was witnessed by two competent witnesses.

"4. While the *onus* of showing a compliance with the statute, as above explained, devolves upon the party seeking to establish the will, yet the formal execution may be shown by persons other than the subscribing witnesses, or may be inferred from circumstances, as well as established by the direct and positive testimony of the attesting witnesses, and it is sufficient if the statute was substantially complied with.

"5. The statute does not require that the subscribing witnesses shall see the testator write his name to the will, but it is sufficient if he did in fact sign the will, provided he afterwards acknowledged it as his will, and requested them to sign as witnesses.

"6. The attestation clause to the will is as follows:

'The said will was signed, and at the request of the testator we signed the same as witnesses, in his presence and in the presence of each other.'

"Now, if you find from the evidence that this attestation clause was read in the presence of the testator and the witnesses at the time they signed the same, and was understood

by the testator, this is sufficient presumptive proof, not only of publication, but also that the witnesses signed at his request."

These instructions are made the subject of objections, which we will proceed to consider.

III. It is first insisted that the use of the word *onus* in the fourth instruction is erroneous, because it is not known to our language, and, therefore, it is to be presumed that it was not understood by the jurors. The objection is answered by the consideration, that the word, though Latin, is incorporated into our language.

1. INSTRUC-
TION: foreign
word: onus.

IV. The other objections to the instruction may be answered together. The statute does not require that the witnesses shall see the testator subscribe the will. Code, section 2326. If the signature be adopted or acknowledged in the presence of the witness it is sufficient. *Hall v. Hall*, 17 Pick., 373; *Dewey v. Dewey*, 1 Met., 349; *Butler v. Benson*, 1 Barb., 526; *Denton v. Franklin*, 9 B. Mon., 28.

2. WILL: exe-
cution: wit-
nesses.

V. The fourth instruction is assailed on the ground that it holds the formal execution of the will, the subscribing thereof, may be shown by testimony other than that of the subscribing witnesses. This instruction, considered in connection with the fifth and sixth, is evidently not intended to express the thought that the testimony of the subscribing witnesses may be dispensed with, or that the will may be proved without calling them. It expresses the idea that the fact of the testator subscribing the will, the formal execution, may be shown by testimony other than that of the subscribing witnesses. Such evidence, however, will not, under the instructions, dispense with the necessity of proof that the signature was adopted or acknowledged by the testator in the presence of the witnesses. We think this is the obvious meaning of the instructions, taken together.

3. ——: ——:
signature.

This view of the import of the instructions is confirmed by reference to the testimony. Both of the witnesses were examined upon the trial, one called by plaintiff and the other by defendant. Neither was present when the testator signed

the will. They were with him just before the will was written, and were asked to retire while the scrivener was engaged in its preparation. After it was completed and signed, they were requested to return to the room. One of the witnesses testifies that the attestation clause set out in the sixth instruction was read to the witnesses, and they were asked by the testator to subscribe their names thereto as witnesses, which was done in his presence, and in the presence of each other. The other witness, who was called by the contestant, testifies as follows: "The door being opened, Mr. Convey said: 'You can come in now.' We went in. He said: 'I have remembered you in my will.' I did not know what he meant. Mr. Brown (the scrivener) says: 'I will read what I have written by the request of the testator, etc.,' and then took his finger or pen, and says: 'You can write your name right there,' and I done it. I did not see any signature there. Mr. Convey did not ask me to sign it, nor did he say it was his will. I did not see Mr. Wright, the other witness, sign his name." Mr. Brown, the scrivener, testified that he wrote the will after the witnesses had retired, and it was signed by the testator before the witnesses returned to the room.

In view of this testimony, it clearly appears that the purpose of the fourth instruction was to present a rule under which the jury were to determine the question whether the testator signed his name to the will, and that it does not refer to the attestation of the will by the witnesses.

VI. The court directed the jury that, to sustain the will, they must find the testator possessed a sound mind, that he was in possession of his mental faculties, so as to comprehend the effect and nature of the transaction, and was able to make a disposition of his property with understanding and reason; that if he was of weak mind or unwise, but possessed of his reason, or if he was under the influence of intoxicating liquors, yet capable of exercising judgment, reason, and deliberation, and of weighing, to a reasonable degree, the consequences of his will, and its effect upon his estate and family, he was competent to execute it. The jury were further directed that they should consider

4. ——: competency of testator: undue influence.

the provisions of the will, together with the mental capacity of the testator, in determining whether undue influence was exercised towards him.

We think the instructions are correct. We have carefully compared them with instructions approved by this court in *Bates v. Bates*, 27 Iowa, 110, and we can discover no difference in the effect and substance of the rules announced therein, and those contained in the instructions under consideration. We, therefore, regard them as correct. Instructions asked by the contestant, in conflict with those given, were rightly refused.

VII. Instructions were given the jury, intended to guide them in determining whether there was undue influence exerted upon the testator, and the will was the result thereof. The contestant's counsel insist that these instructions are erroneous. We are relieved of the duty of considering them, in view of the fact that there is entire absence of evidence tending to establish such undue influence.

The evidence which the contestant claims most strongly tends to show the exercise of undue influence is the declaration made by the testator some time before the will was executed, to the effect "that some of his friends had advised him to cut Lincoln (the contestant) out, and that he did not think he ought to do it." All that this testimony tends to establish is, that the testator was advised to execute the will. But this does not tend to show undue influence, nor can it be presumed to have been exercised from the fact that advice was given. We think, therefore, that the instruction could have wrought no possible prejudice.

VIII. The contestant insists that the verdict is against the weight of the testimony. If this be admitted, it will not authorize us to interfere in the case. There must be such absence of proof to support the verdict as to authorize the conclusion that it was not the result of an honest and intelligent exercise of judgment on the part of the jury. There is no ground for such a conclusion.

In our opinion, the judgment of the Circuit Court ought to be

AFFIRMED.