THE STATE OF IOWA v. JOHN PENNEY, Appellant.

**Murder:** INCLUDED OFFENSES: *Submitting less than manslaughter.* Where the evidence showed that deceased died from the effect of wounds inflicted in a felonious assault committed by another, and that defendant aided and abetted in the commission thereof, it was not necessary to submit to the jury instructions on any offense below that of manslaughter.

ACCOMPLICES. Where defendant aided in making a murderous assault on the deceased, he was guilty of murder, though his hand did not inflict the death wound.

**Conspiracy to Murder:** CONVICTION SUSTAINED. Defendant and C. had each had a difficulty with deceased.  Defendant had been kicked by the deceased on the morning of the killing, and he and C., each having a loaded revolver, went to the camp at which deceased was working, and on arrival defendant exhibited his revolver and made threats against deceased.  With revolvers in their hands, they met the deceased coming home from work.  C. shot first.  Deceased returned the fire, and defendant fired, but missed, when deceased fell to the ground dead.  Defendant then took the dead man's revolver from his grasp.  After his arrest he admitted that he had shot once at deceased and said he supposed he was as deep into it as C. There was evidence that another had said in defendant's presence that he would have the latter run the deceased out of the country.  *Held,* that these facts justified the conclusion of conspiracy to take the life of deceased.

**Confessions:** ADMISSIBILITY.  Where the evidence merely showed that after defendant was placed under arrest the officer questioned him, and his responses constituted the matter in evidence, such confession should not be excluded as not voluntary, much less so when defendant made the same statement to a third party in the officer's presence and without solicitation.

STATEMENT MADE IN PRESENCE OF DEFENDANT: *Duty to disavow.*
Where one jointly indicted with defendant for murder had
said in the latter's presence that defendant would get a gun
and run deceased out of camp, such remark was admissible
against defendant, since, under the circumstances, he should
have disavowed any intention of injuring deceased.

**Instructions:** REASONABLE DOUBT. An instruction to the effect that,
so long as one juror had a reasonable doubt of guilt there
could be no conviction, was properly refused as unnecessary;
the usual instructions as to reasonable doubt having been
given.

DEFINING FELONIOUS. Where a charge given in a criminal case in-
cluded the word "felonious" it was not necessary to define
the word.

**Applications for Continuance:** SUFFICIENCY. Where an application
for a continuance alleged that certain witnesses for the state
were persons whose reputation for truth and veracity were
bad in the community where they resided, and, if time should
be granted, defendant would be able to get evidence to impeach
them, such motion was properly denied, because it is not stated
who the impeaching witnesses are or where they reside and be-
cause the motion is too general and indefinite, stating, so far as
appears, a mere surmise.

SAME. Under Code, section 3664, requiring affidavit by the appli-.
cant for a continuance that he knows of no other witness by
whom the fact could be proved, a motion for continuance on
the ground that defendant could procure the testimony of cer-
tain witnesses residing in another state which does not say
that no witnesses are immediately accessible by whom the fact
can be proven does not conform to the statute, and is therefor
insufficient.

*Appeal from Emmet District Court.*—HON. W. B. QUARTON,
Judge.

WEDNESDAY, DECEMBER 19, 1900.

DEFENDANT was jointly indicted with another for the
crime of murder in the first degree. He was separately
tried, on his own demand, and was convicted of the crime
charged. From this judgment he appeals.—*Affirmed.*

*J. G. Myerly* and *Mack J. Groves* for appellant.

*Milton Remley,* Attorney-General, and *Chas. A. Van Vleck,* Assistant Attorney-General, for the State.

WATERMAN, J.—The greater portion of the argument made on behalf of defendant is devoted to an attempt to show that the evidence does not support the verdict. The facts, as the jury were warranted in finding them, may be summed up as follows: All the parties concerned were colored men, who were engaged in grading for a railway that was being built through Emmet county. They came from southern states, and had been at work but a few weeks when the homicide occurred. While at work they lived in a camp established by the contractor, one Campbell, in whose employ they were, and which was some three miles distant from Estherville. The person killed was one Walter Lockland, and his death was caused by a bullet from a revolver in the hands of one Cario. The killing was done on the 3d day of October, 1889. In the morning of that day defendant had a difficulty with Lockland, and was kicked by him.. On account of some trouble with another fellow employe, defendant had been ordered out of the camp by Campbell. During the greater part of October 3d defendant was in the town of Estherville. In the afternoon of that day he met Cario, who had also quit work, and who, the record discloses, had a personal animosity against Lockland. Defendant and Cario, each armed with a loaded revolver, started late in the afternoon for Campbell's camp, ostensibly to dispose of a stove which Cario had there, and to get some other articles of property owned by him. Digressing now for a moment, we will say that, in the morning of the day on which Lockland was killed, a witness (Frazier) saw defendant and one Carter together, and had a conversation with the latter in defendant's presence. He was asked what Carter said in reference to Walter Lockland, and having Penney do

anything to him. His answer was: "He just said he was going to town and make—and get a gun and run him out of the camp for kicking him." There is other evidence of Carter's saying in defendant's presence that he would have the latter run Lockland out of the country. When Cario and defendant reached the camp, the latter exhibited his revolver and said, "I will get that bully son of a bitch." After spending a little time in the camp, Cario and defendant started for the place where the men were at work. They met Lockland and some other men returning from work. At this meeting place, which we need not describe, the shooting was done. When first seen, Cario and defendant held their revolvers in their hands. So far as is shown, Lockland had not observed them. Their appearance and manner, however, indicated danger to Lockland; for one of his companions, Frazier, at once called out to him, "Look out, Walter." Immediately following this, Cario was heard to say to Lockland, "God damn you! get off that mule," and almost instantly fired at him. Lockland, who was also armed with a pistol, returned the fire; and defendant, who had gone behind the mule on which Lockland was seated, in order to get upon the other side, also shot at Lockland. Cario shot at least once more, and Lockland fell to the ground, dead. It appears that the shot fired by defendant did not hit Lockland, who was struck by two balls which came from the side where Cario was shooting. After Lockland fell, Cario and defendant went up to him. The former struck him in the face with the pistol he held, and the latter took the dead man's revolver from his grasp. After his arrest, defendant admitted that he shot once at Lockland, and said he supposed he was as "deep into it" as Cario. These are the facts as the jury were authorized to find them. It is claimed there is no evidence of a conspiracy between defendant and Cario to take Lockland's life. But we think the circumstances might well justify such a conclusion. Moreover, if there was no previous conspiracy, and if, as claimed by defend-

ant, the meeting with Lockland was unexpected, yet, if defendant aided Cario in making a murderous assault on Lockland, he is equally guilty with his associate, although his hand did not inflict the death wound.

II. Defendant made an application for a continuance on the ground that Cario, who had fled, was an important witness in his behalf, and setting forth the facts which he expected to prove by him. It was also alleged that witnesses C. A. and C. D. Morris, Washington, Frazier, Lawson, and Collins, who had testified for the state before the grand jury, were persons whose reputations for truth and veracity were bad in the community where they resided, and, if time should be granted, defendant would be able to get evidence to impeach them. Where these witnesses lived, or who the impeaching witnesses would be, are facts not stated. It was also alleged in the motion that defendant would be able to procure the testimony of certain named witnesses, who resided in the state of Arkansas, to his good character. The motion was overruled on all grounds except as to the witness Cario, and because of his absence it was sustained in so far as related to his testimony. The state admitted that Cario, if present, would testify as stated, and the case was called for trial in its order. Defendant excepted to the overruling of the motion on the other grounds. As to the impeaching testimony, the motion was too general and indefinite to comply with the statute (Code, section 3664). So far as appears, the motion states a mere surmise of defendant. In relation to the evidence of good character, the motion again fails to conform to the statute; for it is not shown that there were no witnesses immediately accessible by whom the fact could be proved. On the whole, we do not think reversible error can be predicated on this ruling of the trial court.

III. Error is charged because of the fact that the confession of the defendant was received in evidence while he was under arrest, it being insisted that it was not voluntary.

The most that appears in this connection is that after defendant was placed under arrest the officer questioned him, and that his responses constituted the matter given in evidence. This is not sufficient to exclude the confession. *State v. Novak,* 109 Iowa, 717. Moreover, he made the same statements to a third party in the officer's presence, and without solicitation.

IV. Strenuous objection is made to the admission of Carter's remark in defendant's presence in relation to running Lockland out of the country, or out of camp. It is admitted by defendant that, if Carter had said in defendant's presence that the latter was going to run Lockland out of the country, it would have been admissible, because it would have been such a statement as the latter would have been called upon to deny if it were not true. When the testimony of the different witnesses for the state on this point is taken together, that seems to be the tenor of what Carter said. And, if we consider in connection with it the threat made by defendant, it becomes apparent that Carter was speaking for defendant when the statement complained of was made. If no violence was intended by Penney against Lockland, it appears to us that, under the circumstances, he should have disavowed the acts which Carter promised on his behalf. *Com. v. Call,* 21 Pick. 522; Greenleaf, Evidence, section 194. We may say, furthermore, that Carter was jointly indicted with defendant for this crime; it being the theory of the state that he was a member of the conspiracy, the object or purpose of which was the killing of Lockland. Cario was never indicted, not having been apprehended.

V. Another point upon which counsel for appellant rely quite strongly is that the court failed to submit to the jury any offense below that of manslaughter; it being urged that under the evidence defendant might have been found guilty of assault with intent to commit murder, or assault with intent to inflict a great bodily

injury. It is unquestionably true that it was the duty of the court to submit every offense included in that charged, of which there was any evidence. But there must be some evidence ·in order to necessitate this action, as distinguished from a purely imaginary state of affairs. There is no question but that Lockland died from the effect of wounds inflicted in a felonious assault committed by Cario. If defendant aided and abetted Cario by taking part in such assault, he is guilty of murder; or if his aid was given, without malice in the heat of passion or in a sudden affray, his offense would be manslaughter. It could be nothing less; for, if he took no part, he would be without guilt. See *State v. Froelick,* 70 Iowa, 213; *State v. Munchrath,* 78 Iowa, 268; *State v. Perigo,* 80 Iowa, 37; *State v. Row,* 81 Iowa, 138; *State v. Cater,* 100 Iowa, 501.

VI. Defendant asked an instruction, which was refused, to the effect that, so long as any one juror had a reasonable doubt of guilt, there could be no conviction. While each juror is doubtless to act upon his own judgment, such an instruction as asked need not be given. This court has heretofore sustained trial courts in refusing it. *State v. Hamilton,* 57 Iowa, 596; *State v. Fry,* 67 Iowa, 475. The usual instructions as to reasonable doubt were given in this case, and we think they were sufficient.

VII. It is claimed that paragraph 24 of the charge given the jury took from their consideration the matter of self-defense. It may well be questioned whether, under the evidence, had this been the case, it would have afforded ground for reversal. But we do not so construe the instruction, nor do we think it open to any such construction.

VIII. Another claim is that the court should have defined the word "felonious," used in the charge. We do not think there was call for defining a word in such common use. *In re Convey's Will,* 52 Iowa, 197.

We have gone carefully through this record, and our conclusion is that defendant had a fair trial, and the judgment is fully sustained by the testimony.—AFFIRMED.