STATE OF IOWA, Appellee, v. L. WILLIAMS, Appellant.

WEAPONS: Accidental Possession. It is a complete defense to a prosecution for carrying a concealed weapon that the accused honestly did not know the weapon was on his person.

*Appeal from Polk District Court.*—G. A. WILSON, Judge.

NOVEMBER 19, 1918.

THE defendant was convicted of having carried a concealed weapon, and sentenced to serve a term of two years

in the penitentiary at Fort Madison.    He appeals.—*Reversed.*

*S. B. Allen,* for appellant.

*H. M. Havner,* Attorney General, and *F. C. Davidson,* Assistant Attorney General, for appellee.

LADD, J.—It appears from the evidence that, about November 11, 1917, several policemen, while engaged in another matter, observed a crowd gathered in an alley at some distance, and drove in their automobile to that locality; and found in the center two colored men, who had been fighting. The defendant was leaning against a coal shed, and the other was lying on the ground, each blaming the other, and each bloody. Both were arrested and taken to the police station; and, as they started up the steps, a revolver dropped from defendant's clothes to the ground. He declared at first that the other negro had slipped it into his clothes. The other denied this. It was later discovered that defendant had on a coat belonging to one Hawkins, who was a boarder at his house; and he explained that, when he was about 25 or 30 feet from his home, he met one Jones, who invited him (defendant) to go along; that he returned to the house for, and got, what he supposed to be his coat, and went up where the boys were boxing; that he and Barker started in, and, as the latter got mad, he threw him to the ground, when Barker hit him in the mouth; that he knew nothing about the revolver's being in the coat, until it fell out; that he did not know that he was carrying a gun, and never carried one; that he had never seen this revolver until one Hawkins came to his place, six or seven months before; that the coat belonged to Hawkins, though he supposed, in putting it on, that it belonged to him, and knew nothing of the revolver. A juror asked the defendant:

"What pocket was the gun in? A. Well, sir, I don't know. Q. You said you felt something heavy in your pocket? A. I didn't examine the coat to see which pocket it was in."

On redirect examination, defendant's counsel inquired:

"Which side? Do you remember now, which side? A. Well, sir, on the right side. Right side, I think."

His testimony was corroborated by that of his wife and of Hawkins, who identified the coat and also the revolver as belonging to him.

This evidence fairly presents the issue as to whether defendant was aware that the revolver was in his coat. He appears to have known that something was in his pocket; he had been engaged in a fight, immediately preceding the discovery of the revolver; and the story told was one easily manufactured. But that issue was not submitted to the jury, save, possibly, by inference. Indeed, the court, in the third paragraph of the charge, instructed the jury that:

"Before the defendant can be convicted of the crime charged, the State must establish, beyond a reasonable doubt, that the defendant, within three years prior to the finding of the indictment, December 12, 1917, did go armed with and have concealed upon his person a pistol or revolver, and that he did not have a permit to carry said weapon, issued by the chief of police of the city of Des Moines, or the sheriff of Polk County, Iowa. If you find that the State has established both of said propositions beyond a reasonable doubt, then you will find the defendant guilty. But if you fail to so find, you will return a verdict of not guilty."

This excludes the only defense interposed: i. e., that he was unaware that he was carrying a revolver, and therefore was not guilty. Nor is this conclusion avoided by the instruction following, which accurately defined intent, and advised the jury that it was to be inferred from the acts

done, their nature, and surrounding circumstances, and that one is presumed to intend the natural consequences of what he does; but the application of all this was not touched in that or in other instructions. Defendant requested that the jury be told that, if "defendant did not know the revolver was on his person, and that he accidentally, and without intention to carry a revolver, put on a coat in which a revolver was located, without his knowledge, then he would not be guilty of intentionally carrying a concealed weapon, and your verdict should be for the defendant." This instruction was refused, but should have been given.

Of course, the object of carrying a concealed weapon is entirely immaterial, as bearing on the guilt or innocence of the accused; for Section 4775-1a of the Code Supplement, 1913, declares the carrying of such weapon unlawful. *State v. Williams*, 70 Iowa 52. To be guilty of the offense, one must have consciously or intentionally carried the weapon. As was said in the cited case:

"If the weapon was carried upon the person through restraint, or in ignorance of its real character, or for any innocent or lawful purpose, without a doubt this would be a good defense to the prosecution."

See, also, *Miles v. State*, 52 Texas Cr. 561 (124 Am. St. 1106), where it was said that the "failure on his part to discover the fact that the pistol was in his pocket, in the absence of knowledge of this fact, or any intention to violate the law, could not make him guilty." See 40 Cyc. 852, and cases collected.

Because of the error in giving the third instruction, in the refusal of the instruction requested, and in the failure to submit to the jury the question of intention, the judgment is—*Reversed*.

PRESTON, C. J., EVANS and STEVENS, JJ., concur.