STATE OF IOWA, Appellee, v. LAWRENCE WESLEY WILLIAMS, Appellant.

No. 46965.

JULY 29, 1947.

Edward L. O'Connor, of Iowa City, R. S. Milner, of Cedar Rapids, and Frederic M. Miller, of Des Moines, for appellant.

John M. Rankin, Attorney General, Charles H. Scholz, Assistant Attorney General, Wm. W. Crissman, County Attorney, and D. M. Elderkin, Assistant County Attorney, for appellee.

HALE, J.—The grand jury of Linn county on April 23, 1946, returned an indictment accusing defendant of the crime of manslaughter in violation of section 12919, Code of 1939 (section 690.10, Code of 1946). References in the indictment are to the Code of 1939. Hereafter we shall refer to the corresponding sections in the Code of 1946.

It is alleged in the indictment (1) that defendant unlawfully drove his car in violation of section 321.285 relating to driving in a careful and prudent manner, and to speed (2) that he violated section 321.288 relating to control of car and reduction of speed (3) that he violated section 321.327 relating to yielding the right of way at crossing (4) that he violated section 321.329 relating to the exercising of due care as to pedestrians, and sounding the horn, and (5) that he violated section 321.283 relating to reckless driving, and did in each of such violations and particulars drive said automobile in such a manner as to indicate either a willful or wanton disregard for the safety of persons, and as the proximate result and consequence of his reckless, wanton, and unlawful manner of driving said automobile in such manner did, with said automobile, strike and kill said June La Velle Davy.

At the close of the evidence the court withdrew from the consideration of the jury that part of the charge relating to yielding the right of way, section 321.327. On trial defendant was convicted of manslaughter. Motion for new trial, including exceptions to instructions and refusal to instruct overruled, and defendant sentenced. He appeals to this court.

The fatal injury to the decedent, June LaVelle Davy, occurred on First Avenue East in Cedar Rapids, just east of its intersection with Twelfth Street, which runs north and south. On the north side of First Avenue East, between Twelfth Street and Thirteenth Street, the next street east, are the campus and buildings of Coe College. On the south side of First Avenue East all the buildings, with the exception of a grocery store and a pharmacy, are residences. The speed limit in this area was twenty-five miles per hour, indicated by signs on First Avenue East at the intersections of Eleventh Street, Twelfth Street, and at 1309 and 1331 First Avenue East. First Avenue

East is 60.2 feet wide from curb line to curb line. Twelfth Street is 39.8 feet wide. The distance from Thirteenth Street west to Twelfth Street is 660 feet, measured on the north side of First Avenue East. There was a traffic light at the intersection of Thirteenth Street and First Avenue East. Where Twelfth Street crosses First Avenue East there is a jog, the street south of the avenue being west of that street north of the intersection, the southern part being called Twelfth Street Southeast and the northern part Twelfth Street Northeast, the center line of the latter being approximately 80 feet east of the center line of Twelfth Street Southeast. On the south side of First Avenue East, about opposite the sidewalk on the east side of Twelfth Street Northeast, there is a grocery store. There was evidence that at the time of the injury there were two lighted street lights on First Avenue East at the Twelfth Street intersection, and one at the Thirteenth Street intersection, and another on the south side of First Avenue East between Twelfth and Thirteenth Streets. There was some dispute as to the degree of visibility, since it had rained during the day, but there was evidence that, while it had been misty during the day, at the time of the injury the visibility was clear and the streets were dry.

Defendant, about 10:20 in the evening of March 15, 1946, was driving his DeSoto coach west on First Avenue East. He was accompanied by his brother-in-law, Sterling Harman, and in the back seat were several girls who were riding from Marion. Between Twelfth and Thirteenth Streets he passed a car driven by one Von Lackum at a speed estimated by a witness in the Von Lackum car at forty to fifty miles per hour; by other witnesses in that car at forty miles or above. Other witnesses testified that the speed was not less than forty miles per hour and some testified that the speed was forty to fifty. The defendant placed the speed at about thirty miles. At this time defendant drove on or near the middle of the street. There was testimony that the car did not change its speed and that no horn was sounded nor any brakes applied.

While defendant was proceeding westward two young women, Hazeldel Yates and June LaVelle Davy, were crossing

First Avenue East from the north toward the Lazio grocery store on the south side of the street. They stopped at the middle of the street, standing side by side at a point which would be on the east sidewalk of Twelfth Street Northeast if extended south but which at that place was not marked. While so standing they were struck by defendant's car and thrown into the air to a considerable distance. The impact resulted in the death of one girl and serious injury to the other. There were various estimates of the height to which they were thrown, and the distance from the bodies of the girls to the point of collision was about 55 to 61 feet. There is no question that they were struck with tremendous force. After the collision the defendant proceeded down the street and returned in ten or fifteen minutes to the scene of the accident.

I. On appeal defendant assigns four alleged errors. These are (1) the failure to give defendant's requested Instruction No. 9 (2) the failure of the court to give defendant's requested Instruction No. 11 (3) the failure of the court to define the word "wanton" and (4) misconduct of prosecutor. Requested Instruction No. 9 is as follows:

"The Court instructs the jury that the defendant on the evening of March 15, 1946, at the time and place of the alleged commission of the offense, as a driver of a motor vehicle had the right to assume that all persons using the highway on which he was proceeding would observe the law."

If this were a civil action we could appreciate the defendant's claim that he was prejudiced by the court's refusal to give the requested instruction, but contributory negligence is not a defense in a prosecution of this kind. State v. Thomlinson, 209 Iowa 555, 228 N. W. 80; State v. Graff, 228 Iowa 159, 290 N. W. 97. The jury were told that defendant was charged, among other matters, with the violation of part of section 5023.01, Code of 1939 (section 321.285, Code of 1946) by failing to drive at a "careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other

conditions then existing." The court did not give the second part of the section: "and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law"; this last part being the substance of the requested instruction. It was not necessary to instruct on more than that part of the section which the court embodied in its instruction. It was not charged in the indictment that the defendant violated that part of the section referring to the assured clear distance ahead.

The defendant, under the statute, had the right to assume that others were not violating the law, but this right gave him no excuse heedlessly and recklessly to endanger the safety of others, whether violating the law or not. As we have said, it might be urged as a defense in a civil action that the plaintiff was guilty of contributory negligence, but the law was not designed merely for the protection of those innocent of negligence, but of all persons.

The court in its Instruction No. 10 informed the jury of the duty of pedestrians crossing a roadway at an unmarked crossing to yield the right of way to vehicles, but further instructed that notwithstanding, the driver must exercise due care to avoid collision and shall give warning by sounding the horn. It further correctly instructed that if the proximate cause of the collision and death of June LaVelle Davy was her own negligence and conduct, then the defendant must be acquitted, but that, on the other hand, if she, by her own negligence and conduct, contributed to her own death, that would not relieve the defendant of criminal responsibility if the jury found that her death was naturally and proximately caused by the doing by the defendant of an unlawful act or acts as defined, in such a manner as to show a wanton and reckless disregard of and indifference to the safety of other persons who might be reasonably expected to be injured thereby. This instruction protected the defendant to such extent as he was entitled.

II. Objection is made to the court's refusal to give defendant's requested Instruction No. 11. This instruction in

substance was a request that the court instruct the jury to take into consideration whether or not the night was foggy or misty, whether or not the presence of pedestrians was to be anticipated or expected at the place where June LaVelle Davy had the opportunity to step aside and thus avoid the collision, whether or not she had voluntarily placed herself in a position of danger which could be seen and appreciated by her, whether or not there were circumstances which diverted the attention of the defendant, the condition of the defendant's eyesight, as well as other circumstances.

The court did not instruct as to the facts in evidence or attempt to summarize the testimony. The ultimate question was the wanton and reckless driving by the defendant. A finding of such fact necessarily involved a finding that the accident was not an unavoidable accident. To call attention to particular facts in evidence and make no reference to others has frequently been condemned by this court. In the case of State v. Miller, 65 Iowa 60, 21 N. W. 181, we held that under our practice it is not practicable or necessary for the court to review the testimony of the witnesses. In Kelly v. Chicago, R. I. & P. Ry. Co., 138 Iowa 273, 277, 114 N. W. 536, 538, 128 Am. St. Rep. 195, we held:

"The office of an instruction is to state the rule of law applicable and pertinent to the matter to be determined, and not to marshal the evidence, or by special mention to give undue prominence to any particular phase or feature of the fact case made by either party to the controversy."

See, also, State v. Proost, 225 Iowa 628, 635, 281 N. W. 167; State v. Richardson, 216 Iowa 809, 249 N. W. 211; State v. Dunne, 234 Iowa 1185, 1193, 15 N. W. 2d 296, and cases cited.

The instruction in the Richardson case was full and complete, and did include the question of visibility, but this court says, 216 Iowa 809, 814, 249 N. W. 211, 213:

"Further, the court told the jury that to justify a conviction it was incumbent upon the state to also prove that defendant was guilty of criminal negligence in the manner in which

and the speed at which he drove his car. This language clearly eliminated the possibility of a conviction if the act charged was the result of unavoidable accident.''

The court fully covered in its instructions the elements necessary to a conviction, especially in Instructions 6 to 10, inclusive. It was made clear that the negligent act or acts must be done in such a manner as to show a wanton and reckless disregard of and indifference to the safety of other persons who might reasonably be expected to be injured thereby. The facts and conditions existing at the time were in evidence before the jury. It was for them to determine whether or not there was sufficient proof to warrant a finding of guilty. The enumeration of each item was not necessary. See State v. Blair, 209 Iowa 229, 235, 223 N. W. 554.

Defendant cites State v. McCaskill, 160 Iowa 554, 142 N. W. 445. In that case, a prosecution for murder, the question was the failure of the court to set out defendant's claim that the shot fired was unintentional. But it is not applicable to the case at bar, where intent is not in issue. Other cases cited by appellant, State v. Williams, 184 Iowa 1070, 169 N. W. 371; State v. Trybom, 195 Iowa 780, 192 N. W. 813; State v. Hixson, 205 Iowa 1321, 217 N. W. 814; State v. Sanford, 218 Iowa 951, 256 N. W. 650; and Sanford v. Nesbit, 234 Iowa 14, 11 N. W. 2d 695, a civil action for damages, are also inapplicable.

III. The defendant charges that the court erred in refusing to define the word ''wanton'' on request of the jury. The jury retired for deliberation at 5 o'clock p.m. June 4th. At 10:45 a.m. June 5th they returned and, through their foreman, requested a definition of the word ''wanton'' as used in the instructions. The court did not amplify the instructions but called the attention of the jury to instructions already given, and particularly Instruction No. 7, which is as follows:

''You are instructed that the doing of an act in such a manner as to show a wanton and reckless disregard of and indifference to the safety of other persons who might be reasonably expected to be injured thereby means not merely the negligence which might be the foundation for a suit to recover

damages; it is something more than that and means that an act is done in such a manner as to show heedlessness and an utter disregard and abandon as to what results may flow from the doing of the act.''

This instruction, together with the definition of manslaughter in the instructions, to which the court also called attention, should be sufficient to explain to the jury what the court meant by the words ''wanton and reckless.'' The court was not compelled to explain and define every word in the instructions, more especially a word in general use. The word ''wanton'' as used in the connection in which it was given is ordinarily understood to mean just what the court explained it to mean in Instruction No. 7. The definitions cited by defendant indicate that the general use is as used by the court—such absence of care for life, person, or property as exhibits indifference to consequences.

It has long been the rule in this state that the court is not required to instruct as to words in common use, as in the word ''onus'' in In re Will of Convey, 52 Iowa 197, 2 N. W. 1084; and in using ''felonious'' without definition in State v. Penney, 113 Iowa 691, 84 N. W. 509; and the failure to define ''prima facie'' was held not error in Smith v. Pine, 234 Iowa 256, 264, 12 N. W. 2d 236, 241, in the light of the whole instruction. The word ''wanton'' is used in the statute, section 321.283, Code of 1946, in the definition of reckless driving.

■ IV. The defendant alleges, as a ground for reversal, misconduct of the county attorney and his assistant, assigning various instances. The State called, as witnesses in rebuttal, John Battin and Jack Walker. Battin, a rider in the Von Lackum car, which was passed by defendant's car between Thirteenth and Twelfth Streets, was interrogated as to the traffic light at the intersection of Thirteenth Street and First Avenue East, and some questions were asked as to speed and objects in the street near the scene of the accident. Defendant had previously testified as to the light. The testimony of these witnesses was ruled out by the court as not rebuttal. Defendant then called Walker, also a passenger in the Von Lackum car.

Before any questions were asked of this witness, and after objection by defendant and a conference in chambers, the objection was sustained. In view of the statement of defendant as to the light the court might have permitted the answer of the rebutting witness, but in any event there is no showing here of misconduct, the State having submitted to the rulings without further question.

Defendant assigns as an instance of misconduct of counsel the calling in rebuttal of three officers of the police force, two of whom had previously testified, and also calling Frances Barvinek, secretary and stenographer in the police department. The State sought to elicit from them statements made by the defendant in his account of the collision, contrary to his testimony as a witness. Objection was made to the testimony of each witness that no foundation had been laid for impeachment and because the testimony was barred. (Section 321.271, Code of 1946.) The court sustained the objection in each case. No further attempt was made by the State. We have held in civil cases that not only the report required by that section is privileged but the statements made to the officer who secures the report are privileged. Vandell v. Roewe, 232 Iowa 896, 6 N. W. 2d 295. But we also held in Bachelder v. Woodside, 233 Iowa 967, 9 N. W. 2d 464, that an officer may testify as to observations made by him at the scene of the accident and other information obtained at other times. It is of interest also to note that while this provision of the Code provides the report shall be without prejudice to the person reporting, the written report shall not be admissible in or used in evidence in any civil case arising out of the facts on which the report is made. There is no occasion for us to discuss this section further, or consider the use of the word "civil," and for our present purpose we may assume that the court was right in its ruling. The matter was discussed by the court and counsel in chambers, and the ruling of the court made after such discussion, but we are satisfied that making the interrogatories to these witnesses did not amount to intentional misconduct or undue persistence amounting to such. As in the examination in rebuttal of the

witnesses Walker and Battin the court promptly ruled on the admissibility of the questions. See State v. Greenland, 125 Iowa 141, 100 N. W. 341.

 Other objection is made by the defendant to the presentation of Hazeldel Yates, the companion of the deceased girl and injured by the collision, who was brought into the courtroom in a wheel chair. She was unable to testify to the incidents of the collision and stated that she had no recollection either of the accident or manner of her injury. Defendant's motion to strike her answers as incompetent, irrelevant, and immaterial, and that they should not be considered, was sustained, but no objection was made to her as a witness or to the offering of her as such. We have no reason to consider that her being called as a witness was misconduct on the part of the State.

 Further error is charged in the court's failure to hold as misconduct the statements of the county attorney in his final argument. He urged a verdict of guilty and stated that if the jury returned a verdict of not guilty it would be the greatest miscarriage of justice in Linn county over the past twenty years. No other misconduct in argument is alleged and only this part of such argument or of any argument in the case is set out in the abstract. And there is no showing of record that there was any objection or exception taken to the county attorney's argument at the time, and when first raised in the motion for new trial it is too late. State v. Banks, 227 Iowa 1208, 1211, 290 N. W. 534, and cases cited; State v. Lounsbury, 178 Iowa 555, 159 N. W. 998, and cases cited.

 It is urged that there was error in the cross-examination of defendant in relation to violation of rules of the price administration and rules of the parole board as to owning or driving an automobile. Defendant had testified to two convictions of felonies, one in Iowa and one in Illinois, and that he then was, and on March 15, 1946, had been under supervision. The court sustained objections to this line of questioning. We see no misconduct. The court sustained the objection of defendant that the question was incompetent, irrelevant, and immaterial, not proper cross-examination, and collateral. That it

was collateral is no doubt true, but the mere asking of a question which is ruled out by the court does not of itself amount to prejudicial misconduct. Defendant was on the same footing as another witness. While the statute (section 781.13, Code of 1946) requires the cross-examination of a defendant to be confined to matters testified to in the examination in chief, yet, in respect to memory, history, motives, or matters affecting credibility, he may be examined. State v. Kuhn, 117 Iowa 216, 90 N. W. 733; State v. McCumber, 202 Iowa 1382, 212 N. W. 137; State v. Watson, 102 Iowa 651, 72 N. W. 283; State v. Friend, 210 Iowa 980, 230 N. W. 425; State v. Davis, 212 Iowa 582, 234 N. W. 858. The questions asked here do not amount to misconduct. See State v. Moss, 185 Iowa 158, 168 N. W. 164.

 Defendant introduced evidence of good character. Witnesses were asked on cross-examination if they had heard rumors regarding defendant's conduct at various times. In examining witnesses as to the foundation for their opinions as to his moral character these questions were proper. There was no apparent attempt to prejudice the jury. Both defendant and his witnesses testified to matters relating to his character and conduct and it was the duty of the county attorney to inquire about the basis of their opinions. See State v. Wheelock, 218 Iowa 178, 254 N. W. 313; State v. Rowell, 172 Iowa 208, 154 N. W. 488; State v. Kimes, 152 Iowa 240, 132 N. W. 180; State v. Keul, 233 Iowa 852, 5 N. W. 2d 849.

These various instances of alleged misconduct are apparently all that able counsel for the defendant could find in a trial that extended over a period of twelve days, not including Sundays. The court was careful in its rulings on testimony and it refused to grant a new trial. Much discretion is lodged in the court, and properly so, since the court itself is in a position to judge the effect of any such alleged misconduct. We also find no such error as would justify a reversal.

Defendant's counsel suggest, in substance, that it is the cumulative effect of these instances which, taken together, tended to deprive defendant of a fair trial. We have set out fully, perhaps at greater length than necessary, the objections com-

plained of. We do not find them of sufficient force to indicate prejudice, nor do we find any purpose or intent to deprive defendant of fair trial. The assignments of error are insufficient to warrant the granting of a new trial. The cause should be and it is affirmed.—Affirmed.

OLIVER, C. J., and BLISS, GARFIELD, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.