# IN THE SUPREME COURT OF IOWA

No. 19–0892

Submitted September 17, 2020—Filed October 23, 2020

**STATE OF IOWA,**

Appellee,

vs.

**DERRICK EARL JOHNSON,**

Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.

The defendant appeals the denial of a requested instruction for homicide by reckless driving as a lesser included offense to the crime of homicide by intoxicated operation and the district court's limitation of evidence concerning causation. **AFFIRMED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy (argued), Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven (argued), Assistant Attorney General, Linda M. Fangman, County Attorney, and Jeremy L. Westendorf and Molly K. Edwards, Assistant County Attorneys, for appellee.

**McDERMOTT, Justice.**

A driver of a pickup blew through a stop sign and broadsided a minivan. The minivan rolled. One of the passengers in the minivan, a six-month-old infant, died from blunt force head injuries suffered in the crash. The infant wasn't secured in a child restraint system, but merely held on the lap of another passenger—an eight-year-old girl.

A jury found the driver was intoxicated at the time of the crash and convicted him of homicide by intoxicated operation of a vehicle, Iowa Code section 707.6A(1) (2017). The driver appeals, arguing first that he drove recklessly but wasn't intoxicated, and thus, the jury should have had the option to convict him of reckless driving causing homicide, Iowa Code section 707.6A(2)(*a*), which is a lower level of felony than homicide by intoxicated operation. He argues, second, that his actions weren't the cause of the infant's death and that the district court erred in preventing him from putting on evidence that the infant wasn't secured in a child restraint seat and might have survived the crash if he had been.

The crash happened on a Wednesday in early August 2017 around 6:30 p.m. First Street in Waterloo was normally a one-way street with three lanes. But road construction on a nearby street had, as a detour, temporarily turned it into a two-way street with a middle turning lane. Where First Street intersected with Sycamore Street, crews had placed two temporary stop signs, with orange flags attached to the poles, to stop travelers on Sycamore before entering First Street. Vehicles on First Street had no stop sign and could cross Sycamore unimpeded.

Derrick Earl Johnson sped down Sycamore in his pickup and ran the stop signs at the intersection. A minivan fatefully in the intersection at that moment tried to swerve to avoid Johnson, but couldn't. The

resulting T-bone collision flipped the minivan side-over-side until it landed back on its wheels in a pasture.

Johnson told police on the scene that he wasn't paying attention. He had a small cut on his forehead but otherwise appeared unhurt. His speech was normal, and he didn't appear agitated or aggressive. But two police officers who spoke with him detected the odor of alcohol and bloodshot, watery eyes. When asked whether he'd been drinking, Johnson denied it and agreed to the police request for a field sobriety test. His field sobriety test scores indicated he was under the influence. He agreed to take a preliminary breath test, but backed out moments later.

He then told the police he had been drinking earlier that afternoon, but said he stopped around 1 p.m. When asked about his speed just before the crash, he estimated perhaps forty miles per hour; the posted speed limit was twenty-five. Analysis from a video taken of Sycamore Street showed Johnson's pickup going fifty-five and decelerating as he approached the intersection. A crash reconstruction expert at trial estimated his pickup was traveling twenty-nine miles per hour at the moment of impact, with no skid marks or evidence of any evasive action by Johnson immediately before the crash.

The police took Johnson to the police station for further testing. Upon arriving he asked for medical attention, so paramedics came to the police station and took him to the hospital. Meanwhile, the police obtained a search warrant for a blood sample. A lab technician drew his blood at 8:44 p.m. The sample showed a blood alcohol content of 0.069 and tested positive for cocaine.

A toxicologist at trial was asked to extrapolate Johnson's blood alcohol content at the time of the crash, which was over two hours before the blood sample was taken, to account for the body's natural burn off of

alcohol in the bloodstream over time. The answer: 0.090 to 0.122. As to the cocaine, the toxicologist opined that Johnson had ingested it, in a considerable quantity, sometime in the three hours before the crash for it still to have been in his bloodstream at 8:44 p.m.

I.

Johnson claims the crime of homicide by reckless driving is a lesser included offense to the crime of homicide by intoxicated operation, so the district court's failure to instruct the jury that it could find Johnson guilty of this lesser included offense requires us to give Johnson a new trial. Johnson points to the evidence that suggested he didn't immediately appear to be impaired in the moments after the accident and to the changed traffic patterns of the streets because of the construction detour to support a jury argument that reckless driving, and not intoxication, caused the crash.

To determine whether a crime is a lesser included offense of another crime, we use the "impossibility test." *State v. Miller*, 841 N.W.2d 583, 588 (Iowa 2014). The impossibility test is simple in its formulation: Does the first (greater) crime include every essential element of the second (lesser) crime? *See id.* at 587–88. If so, then the second crime is a lesser included offense, and the jury must have the option to convict on the lesser included crime; if not, then not. *State v. Coffin*, 504 N.W.2d 893, 894–95 (Iowa 1993).

Iowa's homicide-by-intoxicated-operation statute makes it a crime to unintentionally cause someone's death "by operating a motor vehicle while intoxicated, as prohibited by section 321J.2." Iowa Code § 707.6A(1). The definition of "intoxicated" (found in section 321J.2) means a person is under the influence of alcohol or drugs (or some combination of them), has a blood alcohol content .08 or greater, or has

any amount of a controlled substance present as measured in a blood or urine test. *Id.* § 321J.2. By comparison, Iowa's homicide-by-reckless-driving statute makes it a crime to unintentionally cause someone's death by "[d]riving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property." *Id.* § 707.6A(2)(*a*).

The legislature uses two different words to define the action in the two different crimes: "operating" while intoxicated in section 707.6A(1), and "[d]riving" in a reckless manner in section 707.6A(2)(*a*). *Id.* § 707.6A(1), (2)(*a*). Operating a vehicle includes a broader scope of activity than does driving a vehicle. The jury's instruction on the definition of "operate" correctly referred to immediate, actual physical control over a moving vehicle or a vehicle simply with "its engine running." *State v. Hopkins*, 576 N.W.2d 374, 377 (Iowa 1998) (quoting *Munson v. Iowa Dep't of Transp.*, 513 N.W.2d 722, 724–25 (Iowa 1994)). If you're driving a vehicle, you're operating it, but the converse isn't true—if you're operating a vehicle, you're not necessarily driving it. *State v. Massick*, 511 N.W.2d 384, 387 (Iowa 1994).

Johnson claims these two vehicular homicide crimes overlap because unintentionally causing a death by operating while intoxicated inherently involves driving recklessly. In *State v. Massick*, we compared the crimes of operating while intoxicated (Iowa Code section 321J.2 (1991)) and reckless driving (Iowa Code section 321.277). 511 N.W.2d at 387–88. Those two crimes are found in our motor vehicle chapter of the Iowa Code and don't involve a resulting unintentional homicide. Sitting in the driver's seat of a car with the engine running, even if parked, qualifies as "operating" a vehicle while intoxicated, even if it doesn't qualify as "driving." *State v. Weaver*, 405 N.W.2d 852, 854 (Iowa 1987). We held in *Massick* that reckless driving isn't a lesser included offense of operating

while intoxicated because the elements between the two crimes don't line up; one can "operate" a vehicle while intoxicated without recklessly "driving" it.  511 N.W.2d at 387–88.

But Johnson argues the two crimes in this case are different because both require causing unintentional death.  This unintentional-death result changes the analysis because, Johnson's argument goes, one can't cause an unintentional death by operating a vehicle without also driving it.  But as the State shows, situations are easy to conceive to defeat this argument.  Say, for example, an intoxicated person starts a car in a closed garage with an infant buckled in the backseat and immediately passes out in the driver's seat, resulting in the death of the infant by carbon monoxide poisoning.  *See, e.g., In re Rugh's Est.*, 211 Iowa 722, 234 N.W. 278, 278 (1931) (describing a factual scenario in which two children perished from carbon monoxide poisoning in a car in a closed garage along with their mother).  This act would fit the definition of unintentionally causing death "by operating a motor vehicle while intoxicated."  But it would not involve driving, let alone "reckless driving."

Which takes us back to the impossibility test: Does the homicide by intoxicated operation include every essential element of homicide by reckless driving?  No, because "driving" is an essential element of homicide by reckless driving, but isn't an element required to prove homicide by intoxicated operation.  Having failed the impossibility test, Johnson's argument that he was entitled to a lesser-included-offense instruction likewise fails.  The fact that Johnson's conduct in this case involved driving and not some nonmoving form of operating a vehicle doesn't change the analysis.  In deciding whether a crime is a lesser included offense, we look to the elements of the offense, not to the particular facts of a case. *Krogmann v. State*, 914 N.W.2d 293, 325 (Iowa 2018).

But citing *State v. Adams*, Johnson argues the Iowa Supreme Court considers "operating" to be synonymous with "driving." 810 N.W.2d 365 (Iowa 2012). Johnson latches onto our statement in *Adams* that "it is the State's burden under section 707.6A(1) to prove a causal connection between the defendant's intoxicated *driving* and the victim's death." *Id.* at 371 (emphasis added). The distinction between "operating" and "driving" didn't matter to the analysis in *Adams*, and we paraphrased section 707.6A(1) with imprecision. *Id.* As we've elaborated, the statute in fact uses the word "operating," and we would have been better served by quoting that word directly. But our paraphrasing in *Adams* doesn't provide any footing to Johnson here.

Recklessness, in any event, is not an element of homicide by intoxicated operation. Johnson quotes our statement in *Massick* that "driving under the influence is certainly reckless behavior." 511 N.W.2d at 387. That's a true statement, but it shouldn't be overread to attach a recklessness element into section 707.6A(1). As we said in *Adams*, homicide by intoxicated operation doesn't require proof of "reckless operation" or "reckless driving" of a vehicle. 810 N.W.2d at 369 (discussing *State v. Kellison*, 233 Iowa 1274, 11 N.W.2d 371 (1943)).

A defendant is ordinarily entitled to a jury instruction on any theory of defense timely made and reasonably supported by the evidence. *State v. Ross*, 573 N.W.2d 906, 913 (Iowa 1998). The district court in this case correctly refused to give the homicide-by-reckless-driving instruction to the jury because it isn't a lesser included offense.

## II.

Johnson next argues the district court erred in preventing him from offering evidence that the infant who died in the crash wasn't secured in a child restraint seat. In so ruling, Johnson contends, the district court

unfairly disarmed him of a potential defense about the cause of the infant's death, since the child might well have survived the crash if the child had been buckled in properly. But the crime of homicide by intoxicated operation doesn't require that the intoxicated operation alone cause the harm; the State need only prove it was one of potentially many causes of the death.

Events typically have many causes. In some situations, the resulting harm is often said to be "overdetermined," meaning the result of accumulated events that contribute to the result, even if one person's misconduct alone would not have been enough to cause the harm. *See* Restatement (Third) of Torts: Liab. For Physical and Emotional Harm § 27 cmt. *f*, at 380 (Am. Law. Inst. 2019) [hereinafter Restatement (Third)]; *see also* Eric A. Johnson, *Wrongful-Aspect Overdetermination: The Scope-of-the-Risk Requirement in Drunk-Driving Homicide*, 46 Conn. L. Rev. 601, 633–34 (2013). A person doesn't avoid liability simply because his conduct requires some other conduct to be sufficient to cause another's harm. *State v. Tyler*, 873 N.W.2d 741, 749 (Iowa 2016); Restatement (Third) § 27 cmt. *f*, at 380. And that means a defendant in a homicide-by-intoxicated-operation case can't beat the charge simply by arguing his intoxicated driving was one of multiple acts necessary to bring about the victim's unintentional death. *State v. Hubka*, 480 N.W.2d 867, 869 (Iowa 1992).

But that Johnson's intoxicated driving contributed to cause the infant's death doesn't address whether Johnson was entitled to put on evidence that the child wasn't properly restrained during the crash and might have survived had he been. That answer is grounded in a different rationale, which says a defendant can't use a homicide victim's alleged "contributory negligence" (the victim's own partial fault for the harm that

resulted) as a defense in a later homicide prosecution. *State v. Williams*, 238 Iowa 838, 843, 28 N.W.2d 514, 518 (Iowa 1947).

In *State v. Hubka*, we more specifically applied this prohibition in a homicide-by-intoxicated-driving case, holding that a defendant can't use a victim's failure to wear a seat belt or other restraint as a defense to this charge. 480 N.W.2d at 869; *see also* Iowa Code § 321.446(6) (2017) (evidence of a failure to use "a child restraint system" not admissible in civil cases). We held in *Hubka* that the lack of seat belts or other restraints was not a "superseding cause" of death that would preclude imposing criminal responsibility on the intoxicated driver. 480 N.W.2d at 870–71. Johnson invites us to overrule *Hubka*, but the rationale we articulated in it remains strong, so we decline the invitation.

We will reverse a district court's ruling to exclude evidence only if we find the district court abused the discretion we normally afford to it on such issues. *See State v. Heard*, 934 N.W.2d 433, 439 (Iowa 2019). The district court's ruling excluding evidence that the infant wasn't secured in the minivan wasn't an abuse of the district court's discretion.

### III.

Johnson makes a third argument on appeal, that the district court improperly imposed a $10 drug abuse resistance education (DARE) surcharge, that needs little elaboration. Iowa Code section 911.2(1) authorizes the DARE surcharge "if a violation arises out of a violation of an offense provided for in chapter 321J or chapter 124, subchapter IV." Johnson was convicted of violating section 707.6A(1), and thus, Johnson argues, the surcharge is illegal. But Iowa Code section 707.6A(1) requires proof of a violation of section 321J.2, which the jury found five different ways on a "special interrogatory" form that asked for specific findings about Johnson's intoxication. His conviction here "arises out of a violation

of an offense provided for in chapter 321J," and thus the surcharge imposed is lawful.  *Id.* § 911.2(1).

**AFFIRMED.**